In re SCHOMACKER PIANO FORTE MFG. CO.

(District Court, E. D. Pennsylvania. August 18, 1908.)

No. 2,745.

1. LANDLORD AND TENANT—RENT—ACCEPTANCE OF SURRENDER OF PREMISES.

Where the trustee of a bankrupt removed its property from the premises occupied by it as lessee under a lease which still had more than a year to run, and surrendered the keys to the lessor, who accepted them, but stated that it was only for the purpose of renting the premises for the benefit of the bankrupt, and at once asked an increased rental, and within the year contracted for extensive repairs to be made at once, such action was an acceptance of the surrender and a waiver of any right which might have existed under the terms of the lease to hold the bankrupt for rent thereafter.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 788.]

2. BANKRUPTCY—CLAIM ENTITLED TO PRIORITY.

Where a lease to a bankrupt corporation required it to make all repairs on the premises, and the landlord was compelled to pay for certain repairs made by the health department which constituted a lien, he was entitled to prove the same against the estate of the bankrupt as an unsecured claim, but not as rent entitled to priority.

In Bankruptcy. On certificate of referee concerning claim of landlord to priority.

C. Wilfred Conard, for trustee.
Gilbert F. Schamberg, for claimant.

J. B. McPHERSON, District Judge. The following extract from the opinion of the learned referee (Alfred Driver, Esq.) sets forth his finding of certain facts, and these, without more, sufficiently support his order of May 27, 1908, in which he refuses priority to the landlord's claim, but directs the trustee to pay a specified sum for use and occupation of the premises, and permits the amount paid by the landlord for repairs to be claimed for as an unsecured debt:

"Fannie E. Mastbaum has filed proof of debt, claiming that there was due to her at and before the filing of the petition in bankruptcy in this case the sum of $7,896.12, and that the consideration of said debt is as follows:

"As to $7,800, the same is claimed for the rental of 1518 Chestnut street, Philadelphia, from March 1, 1907, to April 1, 1908, under and by virtue of a lease of said premises to the bankrupt, of which premises the claimant is the owner.

"As to $96.12, the consideration is that under the terms of said lease all repairs were to be made by the tenant, and that repairs were made by the board of health for which a lien was filed against said premises and the claimant as owner was compelled to pay said lien.

"The bankrupt is a Pennsylvania corporation, and on February 16, 1907, a bill in equity by a stockholder of said corporation was filed in court of common pleas No. 1 of Philadelphia county, in which it is alleged that said corporation has ceased practically to do business and is insolvent and unable to pay its debts and obligations, and on February 20, 1907, the court appointed receivers of all the property and assets of said corporation, and ordered that security be entered in the sum of $80,000. The receivers filed bond in said sum, which was approved on February 23, 1907.

"Said corporation had leased said premises for three years from April 1, 1905, and had paid rent for said premises under said lease at the annual

rent of $7,200, payable in equal monthly payments of $600 in advance, in full to the 1st day of March, 1907. On the 21st day of February, 1907, two days before the receivers appointed by the state court qualified, the petition in bankruptcy was filed, and on February 25, 1907, the district court appointed a receiver, and the receiver's bond in $50,000 was filed and approved on the same day. On March 14, 1907, the said company was adjudged a bankrupt, and on April 12, 1907, a trustee was appointed.

"The claimant is demanding said sum for rent under the following clause of the lease:

"'(8) If lessee shall, during the term of this lease, show an intention to remove his goods from said premises without having satisfied lessor as to the payment of the rent for the balance of the term, or if lessee shall desert said premises or make an assignment for the benefit of creditors, or file or allow to be filed against him a petition in bankruptcy or insolvency, or if he suffer a judgment to be entered against him, or his goods on the premises to be levied upon under process of law, then in every such case the whole rent for the balance of the term of this lease, or any continuation thereof, shall become due and payable forthwith.'

"On June 26, 1907, the trustee filed a petition for re-examination of said claim, in which it is alleged that all of the property of the bankrupt was removed from said premises upon March 15, 1907, on which day said premises were delivered by the receiver to the claimant as the owner thereof, and the keys to said premises were surrendered to the attorney and agent of the owner, and the petitioner says there is due from the estate of the bankrupt only such rent as has accrued to the 15th day of March, 1907, amounting to $290.37, and that the sum of $96.12 claimed for repairs is not for rent and is entitled to participate only, if at all, as a common claim.

"The claimant filed answer to said petition, and says that in accepting the keys to said premises acceptance of absolute surrender of the premises was refused, and that the lease was not treated as at an end, but, on the contrary, the keys were taken and retained with the receiver's permission for the purpose of renting the premises for the benefit of the bankrupt, and that no rights under the lease were waived, and that the premises up to April 1, 1908, would be treated as leased to the bankrupt, and denying that $290.37 only was due, claimed $7,896.12, which includes said sum of $96.12 paid for repairs as due and owing for rent under the Bankruptcy Act.

"The following statement of facts was agreed upon by the claimant and the trustee:

"'It is agreed that the facts with reference to the vacation of the property 1518 Chestnut street by the receiver of the Schomacker Piano Forte Manufacturing Company are as follows, to wit: That all of the property of the said bankrupt was removed from the premises of the claimant upon the 15th of March, 1907, by the receiver in bankruptcy, upon which day the said property and the keys thereof were surrendered by the receiver, through its attorney, William Maul Measey, Esq., to the said claimant as the owner thereof by delivering the same to Gilbert Frank Schamberg, Esq., attorney and agent of the owner of said property.

"'At the time said surrender was made and said keys were delivered, Mr. Schamberg stated to Mr. Measey that he would not accept the keys as a full surrender of the premises, but that the owner proposed to stand upon her legal rights as contained in the lease, but that he would accept the keys for the purpose of renting the property on behalf of the bankrupt estate. To this Mr. Measey replied only that he intended the surrender to be absolute. Thereupon Mr. Schamberg wrote to Mr. Measey a letter stating the terms upon which he intended to accept the surrender, to which letter Mr. Measey replied, stating the terms upon which he intended to surrender.

"'Pursuant to these letters and this conversation Mr. Schamberg, through Felix Isman, a real estate agent in Philadelphia, placed a "For rent" sign upon said property, and endeavored to rent the same, said sign being placed by said Isman on the inside of said premises.

"'It is agreed that Fannie E. Mastbaum is the owner of the premises in question, to whom the bankrupt had been in the custom of paying its rent and whom the bankrupt has recognized as owner and lessor.

"'It is further agreed that the record of proceedings in C. P. No. 1 of Philadelphia county in Re Justus Gray v. Schomacker P. F. Mfg. Co. shall be in evidence.'

"Afterwards evidence was taken before the referee by which the following facts are shown: In July, 1907, counsel for the trustee sent a messenger to the office of the agent of the claimant to learn what sum was asked for the rental of said premises, and the answer was that they were asking a rent of $10,000 per year. Upon inquiry if this was final, the agent said a smaller offer might be made, said about $8,000, and the agent said: 'I don't believe you could get it for eight, but you might offer that.' I said: 'Nothing smaller than eight?' And he said: 'Nothing smaller.'

"Again, about the middle of January, 1908, another messenger was sent by counsel for the trustee to the office of the agent of the claimant to ascertain the rental asked for said premises, and this messenger was told that they were asking $8,000 rent, and the figure would not be smaller whether taken for one, three, or five years. He was also informed that the building was not quite complete, that the building could be seen at any time after it was completed, and the rent would be $8,000 a year.

"The claimant called a witness who had charge of the premises for the purpose of leasing them, and he said that no definite offer to lease the premises that could be considered had been made; that an offer had been made by one person to take the building on a five-year lease beginning at $4,000, and scaling upwards to $6,000, and that no serious offer had been made by any one for a period covering the lease of the former tenant. This witness testified that on December 18, 1907, a contract was made by the owner to put the property in 'what we call rentable condition' for $6,000. This contract included installing a new heating plant, leveling the first floor and changing the stairway so as to make the upstairs entirely separate from the first floor, and that these alterations under the contract were to be finished in 60 days—that is on February 18, 1908—and that at the time the witness testified, January 29, 1908, 'they were figuring for a lease.'

"The trustee testified that no permission had been given by it to the owner, or to any agent of the owner, to make repairs, or alterations, or to do anything to the property, at any time, and that the trustee had not entered the property since the keys were given up.

"By clause 12 of the lease it is agreed, inter alia, as follows:

"'(2) That lessee may sublet parts of these demised premises, but must not sublet as a whole without the written consent of lessor. (3) That for the consideration of the low rent lessee does hereby bind himself, his heirs and assigns, to accept the premises in their present bad condition, put them in good tenantable order and keep them so at his own cost and expense, the intent of this clause being that lessor shall not expend one cent on these premises, inside or out, during the terms of this lease or any extension thereof. * * *'

"Upon the agreed statement of facts, and upon the evidence showing the increased rental demanded by the claimant for the premises, and upon the fact that a contract was made for extensive alterations, far exceeding in scope and expense ordinary or tenantable repairs, in this: that by such alterations, among other things, the entire character of the premises was changed so that the store and the other parts of the building were entirely separated from the other, and said increased rental being demanded and said alterations made without notice to or knowledge of the receiver, or trustee, of the bankrupt, it is manifest that the claimant by her acts determined the lease and assumed complete ownership and dominion over this property, doing with it as she chose, and entirely ignoring her declaration in the letter of March 15, 1907, that possession of the keys would be retained 'for the purpose of placing a "For rent" sign in the premises, and endeavoring to secure a tenant for the benefit of the present tenants. I desire it distinctly understood that in accepting these keys we do not waive any rights which we hold under the lease, nor do we purpose exercising any rights which belong to the tenants, * * * and all acts done by us will be done in their behalf.'

"It is not proved when the contract to make the extensive and costly alterations was first contemplated, nor whether it was finished on the day appointed.

How could the lessee have the enjoyment or use of these premises during the time that such alterations were being made? How could the lessee be benefited by a demand of $10,000 for rental of premises for which, under the lease, the rental was $7,200? It is clear that the claimant was endeavoring to rent the premises at an increased rent not for the tenant's, but for her own benefit.

"It is not contended that, if a tenant at a rent of $10,000 had been obtained, the difference in excess of the rent paid by the bankrupt company would have been paid over to its trustee. It is not shown by the lessor that any effort was made to rent the premises for the same rental as that paid by the tenant. On the contrary, the rent was largely increased.

"Upon the facts, it is found that the acts of the lessor in immediately increasing the rent, and afterwards in making permanent improvements to the premises, brought the lease to an end at the time the possession was surrendered by the receiver."

With this finding of facts I fully agree. The evidence shows clearly, I think, that the landlord was not sincere in professing to qualify her acceptance of the surrender, but that she was intending to make a profit, if possible, by leasing the premises again at a higher rent. Moreover, the true nature of her possession was disclosed by the kind and extent of the alterations that she proceeded to make, and by this action she treated the premises unmistakably as her own, and thus denied in the most effective manner any continuing right of the bankrupt estate under the lease. The referee was justified in his inference of fact that the lessor had brought the lease to an end at the time when possession was surrendered by the receiver.

It is unnecessary, therefore, to consider the validity of the landlord's contention that the bill in equity filed in the court of common pleas of Philadelphia county was "a petition in insolvency" within the meaning of the lease, and that the effect of beginning such a proceeding was to make the rent for the remainder of the term immediately due and payable, and thus to convert it into a fixed liability several days before the petition in bankruptcy was filed. Manifestly the ground for this contention disappeared when the surrender of the lease was accepted. The landlord could not resume the term and continue to claim its equivalent, namely, the remainder of the rent. Having elected to take the premises, the claim for this part of the rent (whatever the claim may have been worth) must be regarded as abandoned.

So far as the item for repairs is concerned, nothing need be added to what the referee has said:

"As to the claim of $96.12 for repairs: This claim is not a part of the rent. The lessee undertook to make all repairs at its own expense. The lessor was obliged to pay above sum for repairs made by the board of health. For this sum the lessor has a claim against the bankrupt estate as a general creditor. It has not been shown that this claim under the lease, or otherwise, should be allowed priority in payment."

The referee's order is affirmed.