[Civ. No. 3854. Third Appellate District.—January 13, 1930.]

L. G. SILLER, Appellant, v. MINNIE M. DUNN et al., Respondents.

Robert L. Shinn and Charles J. Hasman for Appellant.

Downey, Brand & Seymour and Martin I. Welsh for Respondents.

PLUMMER, J.—Plaintiff began this action to recover from the defendants certain sums set out in the complaint as the respective liabilities of the defendants as stockholders of Dunn-Brett Furniture Company, a corporation, on account of an alleged indebtedness of said corporation based upon the provisions contained in a lease of real property, entered into between the plaintiff and the Dunn-Brett Furniture Company on or about the eighth day of March, 1926. At the conclusion of the plaintiff's testimony the court granted the defendants' motion for a nonsuit, and from the judgment entered thereon the plaintiff appeals.

The portion of the lease relied upon by the plaintiff for a recovery is in the words following: "In the event of the lessee surrendering the said demised premises prior to the expiration of the term of this lease, responsibility for the payment of the rental herein provided shall continue until such time as the lessor shall have effected a rerental of the said premises satisfactory to him." Notwithstanding this provision in the lease, it is the contention on the part of the defendants that the testimony of the plaintiff established beyond question that by his own acts he had accepted a surrender of the lease, had repossessed himself of the premises in his own right and for his own uses and

purposes, and had by operation of law released the defendants from further liability for the payment of rent. The lease in question provided a certain stipulated rental and also specified the purposes for which the premises were to be used, to wit, as a furniture and furnishing goods store, and that no other or different use of the said premises be made by the lessee without the written consent of the lessor first had and obtained. The lease described a building consisting of six stories in height and a basement situated on Ninth Street between K and L, in the city of Sacramento, and excepting from the provisions of the lease certain described portions of the premises theretofore leased to a different party. On or about the eighth day of August, 1927, the Dunn-Brett Furniture Company delivered to the plaintiff the key to the premises described in the lease, and at the time of the delivery of the key the plaintiff handed to the president of the corporation a notice to the effect that he would still hold the corporation liable for rent until the premises were released. It is further shown by the testimony that prior to the surrender of the premises by the Furniture Company and the delivery of the key to the premises to the plaintiff, the plaintiff had for about three months made some effort to find another tenant for the premises, the plaintiff having been informed by the officers of the Furniture Company that the business of the company was in failing circumstances and that the company would not be able long to continue in business. There does not appear to be any testimony in the transcript to the effect that the plaintiff made any effort to obtain a tenant for the premises after the surrender thereof by the Furniture Company on the eighth day of August, 1927, or during any of the time for which judgment is asked in this case on account of rentals alleged to be due, nor does the testimony show what the efforts were by the plaintiff to relet the premises, or upon what terms they were offered, but from matters hereinafter referred to we do not deem this material. The testimony shows that at or about the time the Furniture Company gave up the key to the premises, the plaintiff put into execution an idea or thought that he had entertained in relation to converting the premises into an hotel. His language was, "to throw it into an hotel so we could rent it." It further appears from the

transcript that on or about the seventeenth day of August, 1927, the plaintiff began the remodeling of the six-story building herein referred to so as to make it available for hotel purposes, and that this remodeling was finished on or about the fifteenth day of February, 1928. The period of time for which the plaintiff claims rent being from the date when the defendant surrendered the premises up to the fifteenth day of February, 1928, when the same were ready for occupancy for hotel purposes. It further appears from the transcript that the cost of remodeling the premises was somewhere between fifty and sixty thousand dollars; that the work of remodeling required approximately six months. The plaintiff's testimony is to the effect that during the time of remodeling the premises it would have been impossible for any tenant to have taken possession thereof. The questions and answers in this particular are as follows: "Q. In other words, the property during that period was entirely untenantable? A. Absolutely, until we got it finished. Q. There can be no doubt about that, can there, Mr. Siller? A. No." The plaintiff then described in the testimony the manner in which the five upper stories of the building were divided into something like 100 rooms containing baths, etc. The questions and answers of the plaintiff, so far as need be quoted to illustrate this point, are as follows: "Q. Mr. Siller, what did the work of remodeling in general consist of? A. The work? Q. Yes; just describe it generally to the court. A. Just to lay it out into rooms, put the light-well into the center of the building, and all that kind of work that—to throw it into hotel rooms. Q. I understand then, Mr. Siller, it consisted of practically an entire dismantling of the interior of the building, did it not? A. Of the upper floors, it did, yes." It does not appear to be questioned that the remodeling of the building does not come within the terms of repairs mentioned in the lease, nor does it appear to be questioned that the character of the remodeling of the building precluded the possibility of its being used as a furniture and furnishing store. Upon the testimony of the plaintiff showing that the remodeling of the building was not in the nature of repairs, was such as to preclude the further use of the premises for the purposes mentioned in the lease, and that the plaintiff intended to and did take possession of the

premises for the purposes of converting them to a different use from that mentioned in the lease, and was doing so not for the benefit of the lessee, but for and on his own account, a nonsuit was granted. There is nothing in the testimony indicating that the plaintiff consulted the lessee as to the remodeling of the premises, or that it was understood that the premises were being remodeled for the uses and purposes of the lessee, or for anyone except the owner thereof. We think the testimony is conclusive that the plaintiff took possession of the premises solely as owner in his own right and not in the furtherance of any of the covenants of the lease, and that it was in execution of a plan to convert the premises into an hotel and change its uses entirely from that limited in the lease.

The law seems to be pretty well settled that upon the surrender of leased premises by a lessee before the expiration of the term provided for in the lease, the owner of the premises has three remedies; first, he may do nothing and sue the lessee as each installment of rent becomes due, or for the whole thereof when it becomes due; second, he may treat the lease as terminated and retake possession of the premises and use the same for his own purposes as the exclusive owner thereof; or, third, he may retake possession of the premises for the tenant's account and hold the tenant in damages for the difference between the rentals provided for in the lease and what, in good faith, he was able to procure from a reletting. Only one question is involved upon this appeal, and that is, notwithstanding the clause in the lease which we have quoted, the plaintiff abandoned the lease and by his actions is now estopped to maintain this action.

In the case of *Welcome* v. *Hess,* 90 Cal. 507 [25 Am. St. Rep. 145, 27 Pac. 369], it was held (quoting from the syllabus) that ''where tenants leased a building for a term of years as a store, and abandoned the premises after one year's occupation thereof, sending the keys to the landlord, the acts of the landlord in taking possession of the premises, and reletting them for a period longer than the remainder of the term, without notifying the original lessees that he should so do on their account, and without notifying them that he should continue to hold them liable for the rent, show an acceptance by the landlord of the

surrender, and he is estopped from denying it." The opinion in that case shows what the landlord may do, as we have hereinbefore stated. It also shows that during the unexpired portion of the term of the lease the lessee has a right to resume possession of the premises unless the landlord has done something which is equivalent to the acceptance of a surrender of the lease. In 35 C. J. 1086 we find the rule thus stated: "A surrender by operation of law occurs where the parties without express surrender do some act or acts from which it is necessarily implied that they have both agreed to consider the surrender as made— acts which are necessarily inconsistent with the continued relation of landlord and tenant. While it has frequently been said that whether a lease has been terminated by operation of law is a question of intention of the parties, it is, nevertheless, held that this mutual agreement may be implied upon the principle of estoppel from the acts of the parties, independently of, and even contrary to, their actual intent." In *Bernard* v. *Renard*, 175 Cal. 230 [3 A. L. R. 1076, 165 Pac. 694], it is held (quoting from the syllabus in 3 A. L. R.): "An acceptance of a surrender of a lease will be effective if, after the lessee's refusal to take possession or be bound by the lease, the lessor resumes absolute control of the property and attempts to let it without any notice to the lessee that he is not acting in his own right." In *Voss* v. *Levi*, 33 Cal. App. 671 [166 Pac. 359], the court, in its opinion, used the following language: "Such acceptance of surrender was evidenced only at the time the plaintiff, on the 19th day of January, 1915, took possession of the premises and proceeded to have them remodeled. That an acceptance of surrender was then completely had, we have no doubt." In *Rehkopf* v. *Wirz*, 31 Cal. App. 695 [161 Pac. 285, 286], in considering the question of the acceptance of a surrender of a lease, it is said, referring to the right of the lessor to relet the premises and hold the tenant liable: "But a lessor who chooses to follow that course must in some manner give the lessee information that he is accepting such possession for the benefit of the tenant, and not in his own right and for his own benefit. If the lessor takes possession of property delivered to him by his tenant and does so unqualifiedly, he thereby releases the tenant." (Citing a number of authorities.)

And further: "An unqualified taking of possession by the lessor and reletting of the premises by him as owner to new tenants is inconsistent with the continuing force of the original lease. . . . If done pursuant to the tenant's attempted abandonment, it is an acceptance of the surrender and likewise releases the tenant." There can be no difference in principle between the acts referred to in this case, which amounts to a release of the tenant, and the circumstances shown by the evidence upon the record in this case. The remodeling of the premises by the owner cannot be held to be anything other than a taking of possession of the premises exclusively by the landlord or owner for his own uses and purposes as such owner. As we have stated, the testimony in this case shows that the premises were rendered wholly untenantable during the period for which rent is claimed, and also that the premises have been rendered wholly unusable for the purposes mentioned in the lease to the Furniture Company.

In the case of *Meeker* v. *Spalsbury et al.*, 66 N. J. L. 60 [48 Atl. 1026], the court, in considering a lease having in it a provision relative to repairs similar to the one under consideration, and where it was claimed that a surrender had been accepted by operation of law, used the following language: "He (referring to the landlord) was to have the right to enter and make such repairs as should be necessary for the preservation of the premises. When the plaintiff did more than that, he conclusively evidenced his intention to hold possession on his own account, thereby accepting the tenants' abandonment as a surrender." The case of *Meeker* v. *Spalsbury*, *supra*, is referred to and approved in the case of *Finch* v. *Browe Co.*, (N. J. Ch.) 99 Atl. 926. To the same effect in principle is the case of *In re Schomacker Piano Forte Mfg. Co.*, 163 Fed. 413. In 15 California Jurisprudence, 797, section 214, the rule is stated that making material alterations in the leased premises amounts to an acceptance of the abandonment of the premises by the lessee. We do not deem it necessary to cite or quote from other authorities, as the foregoing show the rule well settled that when the landlord remodels premises so as to make them unavailable for the purposes for which they were leased, and also renders them untenantable during the period of remodeling, that rent for such period cannot be collected,

for the reason that acceptance of the surrender of the lease will be inferred as a matter of law, and the landlord estopped from asserting the contrary. The respondents do not question the contention of the appellant that a clause in a lease, such as we have set forth herein, will be upheld where the parties have acted consistently therewith, but only contend that the plaintiff's evidence conclusively establishes that his acts were not consistent therewith, and that by his taking unqualifiedly possession of the premises, and as he says, practically dismantling five of the floors thereof and remodeling the building so as to fit it for an entirely different use and purpose, establishes beyond controversy in law an acceptance of the abandonment of the lease.

There being no evidence to the contrary, we think the order of the trial court in granting the nonsuit was correct, and the judgment entered thereon should be and the same is hereby affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 11, 1930.