**Walter R. FLACK et al., Appellants,**

v.

**SARNOSA OIL CORPORATION, Appellee.**

No. 12957.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 5, 1956.

Rehearing Denied Oct. 3, 1956.

Frank M. Rosson, San Antonio, for appellants.

Morrison, Dittmar & Dahlgren, Michael J. Kaine, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This is an appeal by Walter R. Flack, hereinafter referred to as Flack, and Tower College of Business and Accounting, hereinafter referred to as Tower College, from a judgment in favor of Sarnosa Oil Corporation, hereinafter referred to as

Sarnosa, in the sum of $1,474.87. The trial was before the court without the intervention of a jury. The trial court filed findings of fact and conclusions of law.

The record shows that Sarnosa was the owner of the premises known as 222 Losoya Street in the City of San Antonio, Bexar County, Texas. On May 1, 1949, Sarnosa leased to Olive M. Biddison and Sallie A. Aguirre, members of a partnership known as Southwest Business Institute, by written lease contract, the premises known as 222½ Losoya Street, which was the second and third floor of the building at 222 Losoya Street, for a period of five years. This lease would have terminated on April 30, 1954. The lease was for the total consideration of $16,200, payable as follows: $1,620 on the signing of the lease, $270 on the first day of May, 1949, and the sum of $270 on the first of each and every month thereafter up to and including October, 1953. The $1,620 was paid in advance, as was the monthly rental until February, 1952, when Flack and Tower College adopted and ratified the existing lease with certain changes and alterations. Flack and Tower College thereafter paid the stipulated rent up to and including June 1, 1952, but defaulted the monthly payment due on July 1, 1952, and vacated the premises. The lease contained a provision, in effect, that in case of default the lessor could re-let the premises as the agent of the lessee. This the lessor did and this suit is for the difference between the rent received by the lessor from the new tenants and what it would have received from Flack and Tower College if they had not defaulted and vacated the premises.

The lessor first let the premises to Mrs. Mary Van Zandt, who occupied them for about one year and then vacated. The lessor then let the premises to Jack Dayton and James Denas. There is no material dispute as to the amount of rent received from these two new tenants, the commission paid to secure them, or the money spent in changing the premises to suit the tenants. The commissions and cost of changes were charged to appellants.

Appellants base their entire defense upon the proposition that Douglas Ramsey Semmes, the President of Sarnosa, was unfaithful to his fiduciary duties as agent for appellants in re-letting the premises to Mrs. Van Zandt, in that he placed in her lease a cancellation provision in the interest of Sarnosa and not in the interest of appellants, and that in so doing he accepted a surrender of the premises and thereby terminated their lease contract.

There can be no question here as to the fact that appellants vacated and abandoned the leased premises and failed to keep up their monthly rental payments. Likewise, there is no question but that under the terms of the lease appellee had a right to re-let the premises as agent of appellants.

The trial court made the following findings of fact:

"10. That in reletting the premises for the unexpired term, the plaintiff was acting for the benefit of and as agent for the lessees in accordance with the terms of the lease agreement. * * *

"12. That the plaintiff did not act in such a manner in reletting the premises as to lead the defendants to believe that the plaintiff as lessor had accepted the surrender of premises by lessees."

The court made the following additional findings:

"That the lessor corporation was not acting as the agent for Flack and Tower College in the placing in the Van Zandt lease of clause (a), as to the right to sell the premises, and as to clause (b), as to the right to demolish the premises, as set out in the said 90-day cancellation clause in said lease."

Notwithstanding this finding, the court rendered judgment in favor of appellee,

which gave effect to the continuing effect of the lease and necessarily amounted to a finding that appellee had not accepted the surrender of the leased premises by appellants.

■ Thus we come to the question as to whether the conduct on the part of lessor in placing said clauses (a) and (b) in the lease compels a finding as a matter of law that appellee was not acting as the agent of appellants in re-letting the premises but in its own interest. If appellee in entering into the Van Zandt lease was not acting as the agent of appellants and in their interest, but was treating the property as its own and acting as owner instead of agent, then such conduct would amount to an acceptance of the surrender of the premises and a termination of the lease executed by appellants.

The 90-day cancellation provision in the Van Zandt lease reads as follows:

"Notwithstanding anything herein to the contrary, the Lessor reserves the right to cancel this lease by giving the Lessee three months written notice to vacate and returning to Lessee the above mentioned deposit of $525.00 and granting the Lessee three months tenancy after said notice free of any rent whatsoever, only in the case the Lessor (a) makes a bona-fide sale of the property (b) demolishes the property or (c) rents the entire premises, including the ground floor, to a single tenant."

Under this cancellation clause the Lessor could cancel the lease under the three circumstances set forth and give the lessee three months free rent. Appellants did not know that such a clause was included in the new lease.

Mr. Semmes, the President of Sarnosa, who acted for the corporation in executing the Van Zandt lease, gave an explanation as to why he wanted provision (c) in the lease. He felt that Mrs. Van Zandt was not strong financially and that it would be easier to keep the premises leased if one tenant had all three floors. The trial court evidently accepted this explanation and did not find that Semmes was representing Sarnosa in including provision (c) in the lease, but no satisfactory explanation was given as to why provisions (a) and (b) were inserted, and we must presume and find, as did the trial court, that he was acting in the interest of Sarnosa in adding these two provisions.

■ Appellee was acting in its own interest in placing in the lease the 90-day cancellation provision, insofar as clauses (a) and (b) are concerned. This 90-day cancellation provision was a very important provision in the lease. It provided that in the event appellee decided to exercise it, the $525 down payment would be returned and the lessee should have three months free occupancy of the premises.

We must either presume that if appellee was attempting to act as the agent of appellants that it was an unfaithful agent, acting for its self-interest, or that in executing the Van Zandt lease it was acting as a principal. Burleson v. Earnest, Tex. Civ.App., 153 S.W.2d 869. If appellee acted as principal in executing the Van Zandt lease, such action constitutes an acceptance of appellants' offer to surrender the leased premises and appellee cannot recover for the full term of the lease.

We do not find any authorities directly in point, but the following support in a general way what we have said: Barret v. Heartfield, Tex.Civ.App., 140 S.W.2d 942; Cannon v. Freyermuth, Tex.Civ.App., 4 S.W.2d 84; Ralph v. Deiley, 293 Pa. 90, 141 A. 640, 61 A.L.R. 763; Annotations, 110 A.L.R. 368; Bonsignore v. Koondel, 134 Misc. 344, 235 N.Y.S. 453; In re Goldburg's Estate, 148 Misc. 607, 266 N.Y.S. 106; Siller v. Dunn, 103 Cal.App. 154, 284 P. 232; Casper National Bank v. Curry, 51 Wyo. 284, 65 P.2d 1116, 110 A.L.R. 360; 2 C.J.S., Agency, § 109 B, p. 1292.

Appellants defaulted on July 1, 1952, and the premises were not let to Mrs. Van

Zandt until Dec. 1, 1952. Appellants would be responsible for the rent they had contracted to pay during the time the premises were vacant, a period of five months. This would amount to $800 rent and $80 attorney's fees.

The judgment of the trial court will be reformed so that the total amount of the recovery will be $880 rather than $1,474.87, and as thus amended it will be affirmed.

NORVELL, Justice (dissenting).

The trial judge made full and complete findings of fact which are not challenged by points of error on this appeal. In my opinion these findings fully support the judgment rendered and I would affirm the judgment of the trial court.

As against the trial court's findings and conclusions which culminated in a holding that there was no surrender of the Tower-Flack lease, it is urged that the insertion of a ninety-day cancellation clause in the subsequent Van Zandt lease resulted in a surrender of the prior lease as a matter of law.

"A surrender of a lease by operation of law results from acts which imply mutual consent independent of the expressed intention of the parties that their acts shall have that effect; it is by way of estoppel." 32 Am.Jur. 766, Landlord & Tenant, § 905. Estoppel is a doctrine of chancery and hence controlled by equitable principles. The appellants in this case breached the rental agreement. By so doing they placed the burden upon appellee to recoup the loss thus occasioned as best it could in accordance with the provisions of the contract. While the *exercise* of the ninety-day option in the Van Zandt lease and a sale of the premises might result in an acceptance of a surrender of the Tower-Flack lease, it seems that the mere presence of such a clause in the subsequent lease should not have that effect if equitable principles be applied. After all, the land-lord in this case is not the party in default. It was confronted with the threat of economic loss occasioned by a broken lease contract and should be permitted to take reasonable steps to protect itself. The cancellation clause employed here was not unreasonable under the circumstances. Its insertion in the lease did not constitute an act of bad faith. In fact it is not shown to what extent, if any, the presence of this clause in the lease lessened the value of the Van Zandt lease to the tenant. Surrender is, after all, fundamentally a doctrine of mutual consent and we should be wary of giving legal effect to acts which are clearly against the intention of at least one of the contracting parties.

I have found no authority holding that a cancellation clause in a second lease operates as a surrender of a prior lease as a matter of law and would not so hold in this case.