[S. F. No. 7024.  In Bank.—June 1, 1917.]

NELLIE B. BERNARD, Respondent, v. L. RENARD et al., Appellants.

LANDLORD AND TENANT—ABANDONMENT BY LESSEE—ACCEPTANCE OF SURRENDER BY LESSOR.—Where a lessee declines to take possession of the demised premises, and notifies the lessor of his rescission of the lease, which rescission the lessor refuses to accept, the subsequent assumption of actual possession and control of the premises by the lessor, including efforts to let and the actual reletting thereof to others, without saying or doing anything to so qualify his acts as to indicate that he is not acting in his own right and for his own benefit as owner entitled to possession, and without saying or doing anything to indicate that he is acting for the benefit of the lessee or reletting on the lessee's account and for his benefit, operates as an acceptance by the lessor of the surrender of the term.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial.    Franklin A. Griffin, Judge.

The facts are stated in the opinion of the court.

Joseph E. O'Donnell, Costello & Costello, and E. R. Hoerchner, for Appellants.

Houghton & Houghton, for Respondent.

ANGELLOTTI, C. J.—This is an action to recover a judgment for money alleged to be due as rent under the terms of a written lease, the defendants being the trustees of the creditors of the lessee corporation (a dissolved corporation), and the sureties on the bond given by the lessee for the payment of the stipulated rent and the observance of the other covenants of the lease.    The cause was tried with a jury, which returned a verdict for plaintiff for seven thousand five hundred dollars.    Defendants appeal from the judgment and from an order denying their motion for a new trial.

The action was for rents at nine hundred dollars per month for the period commencing November 14, 1908, and ending June 14, 1910.    The lease was one dated March 6, 1907, of a lot of land and a building to be erected by the lessor thereon, for the term of ten years, said term to begin when the building was completed and ready for occupancy, at nine hundred dollars per month for the first five years, and one thousand dollars per month. for the second five years.    Before the completion of the building, and in February, 1908, differences arose between the parties.    During that month a formal notice of rescission signed by the lessee was left on the premises and received by the lessor.    It stated substantially that the lessee, by reason of the fact that it was induced to enter the lease by certain alleged false and fraudulent representations, and also because the building had not been completed as soon as promised, elected to rescind the lease, offered to restore all property in said building and premises, and demanded that the lease be rescinded and surrendered.    The lessor on February 17, 1908, sent to the lessee the following notice, viz.: ''Your notice of rescission I have received and the only answer I have to make to it is that the rescission of a lease requires the action

of all parties thereto or the judgment of a competent court. Your building will be ready for occupancy within the next forty days.'' On May 14, 1908, the lessor notified the lessee that the building was completed and tendered possession thereof and demanded payment of the first month's rent, and the lessee refused to accept it or any portion thereof, or to pay any rent under the lease. This apparently ended the communications between the parties until the commencement of this action over four years later, November 14, 1912. The lessee never went into possession of the premises and never paid any rent.

Almost immediately after May 14, 1908, the plaintiff began efforts to secure a tenant for the property. She, however, secured no permanent tenant, although she endeavored to do so. It was put into the hands of various real estate agents for that purpose, and there were large signs ''painted on the building, placed on it,'' for the purpose of attracting tenants. Various ''to let'' signs were placed on the building by plaintiff, the first as early anyway as July, 1908. The premises were let by the lessor temporarily to various parties. They were first so let during the latter part of 1908 ''for between a month or two months,'' $324 rental being received. In the spring of 1909 the premises were so let for about three months at $150 a month. Again they were so let to various tenants through a real estate agency, for ''a trifle less than'' six hundred dollars. On July 10, 1910, according to the allegations of the complaint, plaintiff finally disposed of said building. During all of the time after June, 1908, plaintiff apparently treated the property as absolutely at her disposal for her own benefit, just as though the lease to the defendant lessee was not in existence. After the refusal of the lessee to accept the premises, no word, oral or written, was conveyed to it to the effect that plaintiff did not hold possession of the premises solely in her own right and for her own benefit and without regard to the lease. No suggestion was made to the lessee that she intended to let the premises for the benefit of the lessee, or at all, and no information was given as to the fact of any of the tenancies. And finally, in July, 1910, as we have seen, the building was permanently disposed of by plaintiff, apparently without any information as to the intention to dispose of it being given to the lessee.

Upon these facts, as to which there is no conflict, it seems clear to us that the doctrine of *Welcome* v. *Hess,* 90 Cal. 507, [25 Am. St. Rep. 145, 27 Pac. 369], is applicable. It is true that the facts of this case differ in some particulars from those of *Welcome* v. *Hess, supra,* but they differ in no such way as to make the conclusion arrived at there inapplicable here. The real thing there decided was that where the premises are abandoned by the tenant, who avows his intention not to be bound by his lease, the assumption of actual possession and absolute control of the premises by the lessor, including efforts to let and the actual reletting thereof to others, without saying or doing anything to so qualify his acts as to indicate that he is not acting in his own right and for his own benefit as owner entitled to possession, without saying or doing anything to indicate that he is acting for the benefit of the lessee or reletting on the lessee's account and for his benefit, he will not be heard thereafter to say that he has not accepted a surrender of the term. This is the settled law in this state, although there are cases to the contrary in some other states. The discussion of the question in *Welcome* v. *Hess, supra,* was such as to make it unnecessary to consider the matter at length in this opinion. The law on this question was very clearly stated by the district court of appeal of the second appellate district in an opinion written by Presiding Justice Conrey in *Rehkopf* v. *Wirz,* 31 Cal. App. 695, [161 Pac. 285], as follows:

"Where a tenant abandons the leased property and repudiates the lease, the landlord may accept possession of the property for the benefit of the tenant and relet the same, and thereupon may maintain an action for damages for the difference between what he was able in good faith to let the property for and the amount provided to be paid under the lease agreement. (*Bradbury* v. *Higginson,* 162 Cal. 602, [123 Pac. 797].) But a lessor who chooses to follow that course must in some manner give the lessee information that he is accepting such possession for the benefit of the tenant and not in his own right and for his own benefit. If the lessor takes possession of property delivered to him by his tenant and does so unqualifiedly, he thereby releases the tenant. (*Baker* v. *Eilers Music Co.,* 26 Cal. App. 371, [146 Pac. 1056]; *Welcome* v. *Hess,* 90 Cal. 507, [25 Am. St. Rep. 145, 27 Pac. 369].) An unqualified taking of possession by the lessor and reletting of the premises by him as owner to new tenants is inconsistent

with the continuing force of the original lease. If done without the consent of the tenant to such interference, it is an eviction, and the tenant will be released. If done pursuant to the tenant's attempted abandonment, it is an acceptance of the surrender and likewise releases the tenant.''

It is clear that the mere fact that the lessee refused to accept possession at all and never went into possession does not present any material distinction, in view of the subsequent acts of the lessor. Nor does it materially affect the matter that the lessor, notwithstanding her efforts in that behalf, failed to obtain a permanent tenant for a term extending beyond the term prescribed by the lease to defendant corporation. Of course, such a letting without any act or word to qualify its effect would have very clearly shown an absolute acceptance of the surrender of the term, just as the permanent disposition by the lessor of the building in July, 1910, showed to a certainty that the lessor was then holding the premises solely in her own right and in no way for the benefit of the tenant. But her efforts to obtain a permanent tenant were just as potent in their effect as showing her attitude with regard to the premises in this connection, as would have been her actual letting in the event of finding such a tenant, and her conduct in this regard together with her conduct generally in relation to the premises from as early as July, 1908, bring the case within the rule we have referred to, notwithstanding her failure to obtain a permanent tenant. The refusal to accept the offer of rescission made in February, 1908, and the subsequent tender of the premises and demand for one month's rent in May, 1908, are also of no importance in so far as the question we are considering is concerned. These things, of course, showed the then attitude of the lessor in the matter and the desire that the lessee should accept the premises under the lease. But even then the lessor did not indicate that in the event of the lessee's refusal to accept possession she would nevertheless continue to regard the property as belonging to the tenant for the specified term. And, as we have seen, her subsequent conduct with regard thereto was a complete negation of any such attitude on her part.

Some reliance is placed by plaintiff in this connection upon certain allegations in defendants' pleadings by way of further answer and defense and cross-complaint. In addition to their

denials of the allegations of the complaint in this action commenced November 14, 1912, they sought a conclusion of rescission of the contract of lease on the ground of alleged false representations which induced the making thereof, and in this connection alleged the giving of the notice of rescission in February, 1908, to which we have referred, and that the plaintiff "refused and still refuses to rescind or cancel said lease." So far as the question of surrender that we have been discussing is concerned, the only force that can be attributed to this allegation in the connection in which it is used is, of course, by way of admission of the defendants that there never was any unqualified acceptance by the lessor of possession and control of the premises for her own exclusive benefit, notwithstanding the lease. We cannot read it as intended to have or as having in fact any such meaning, or as being of any importance in the solution of the question we have discussed.

The judgment and order denying a new trial are reversed.

Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.