[Civ. No. 14531. First Dist., Div. One. Apr. 23, 1951.]

ROY L. DORCICH et al., Appellants, v. TIME OIL COMPANY (a Corporation), Respondent.

Mandl & Atteridge for Appellants.

Evans & O'Gara and Albert G. Evans for Respondent.

PETERS, P. J.—The basic question on this appeal is whether the key finding that after an abandonment of a lease by the tenant the landlord accepted a surrender, is supported by the evidence.

The premises in question are owned by Roy and Katherine Dorcich, the plaintiffs, are located near Salinas in Monterey County, and are improved with a gasoline service station and some large gasoline storage tanks. The plaintiffs leased the premises to the Time Oil Company, the defendant, for five years commencing September 12, 1947, and ending September 11, 1952, at a rental of $250 per month. In October of 1947, Time Oil sublet the premises to one Holt, who occupied the property under this sublease until May 14, 1948, paying rent directly to Time Oil. During Holt's occupancy certain work was done on the premises by plaintiffs, which was done under the following circumstances: When the premises were leased to Time Oil the surface was covered with rock and gravel which was not entirely level, there being high places and some chuckholes. Holt, in March or April, 1948, asked Dorcich if the premises could not be levelled. Dorcich, without notifying Time Oil, brought in a driveway roller equipped with a levelling blade and proceeded to scrape and roll the surface of the premises, thus filling in the chuckholes and cutting down the high spots. The work took only a couple of hours and the gasoline station remained open while the work was being done. There is a conflict in the evidence as to whether or not this work improved the premises. Some of the witnesses for Time Oil testified that the work resulted in loosening the hard surface of the ground so that when it rained the area became very muddy. Dorcich's witnesses testified that the effect of this work was substantially to improve the premises.

On or about May 14, 1948, Time Oil and Holt cancelled their sublease, and one Smith sublet the premises from Time

Oil for a term ending July 31, 1952, at a rental of $250 per month. The sublease was signed by Smith, but all copies of the agreement were kept by Time Oil. Smith asked Dorcich to black top the driveways. In the latter part of July, 1948, Dorcich, without securing the consent of Time Oil, had the premises rolled, gravelled and oil topped.

In the meantime, there had been some correspondence between Time Oil and plaintiffs. On June 15, 1948, Time Oil addressed a formal notice to plaintiffs demanding that they, as landlords, restore the surface of the premises to its original condition. The notice stated that the surface of the premises had been destroyed and that this constituted an interference with the quiet, peaceful and uninterrupted operation of the premises by Time Oil. The notice concludes with the statement that unless the premises are restored within 10 days from the date of the notice, the lease would be terminated.

The attorneys for plaintiffs replied to this notice by a letter dated June 21, 1948, in which it is stated that the challenged work did not change the surface of the leased premises but merely improved the surface at the request of Holt "your representatives on the premises." The letter stated that the plaintiffs do not accept the proffered surrender but will hold Time Oil to a strict performance of all of the provisions of the lease. The attorneys for plaintiffs sent another letter to Time Oil, which letter is dated June 22, 1948, notifying Time Oil that the sublessee of Time Oil, Smith, wanted some work done on the surface of the leased premises; that plaintiffs were willing to do this work at their own expense provided that Time Oil agreed that Smith was its sublessee; that the tenant would cancel its notice of June 15, 1948; and that Time Oil would agree that the work could be done and would not constitute an interference with the possession of Time Oil.

By letter dated July 2, 1948, Time Oil, through its attorney, stated that since the repairs requested by its letter of June 15, 1948, had not been made, it considered the lease terminated. The letter also demanded $3,500 as damages because of defendant's claimed inability to operate the station because the plaintiffs refused to restore the premises to their original condition.

Smith paid some rentals to Time Oil under his sublease, the last payment being dated July 15, 1948. Whether this payment was for back or current rent is not clear. In the meantime, Time Oil was paying the plaintiffs $250 a month

as called for by the lease. Plaintiffs received the last check from Time Oil for $250 on June 7, 1948, which check was for rent until July 14, 1948.

After July 15, 1948, Smith dealt directly with Dorcich and paid to him $175 a month for the next four months. The precise background of these payments by Smith to Dorcich is somewhat obscure. By its letter dated July 2, 1948, Time Oil had notified Dorcich that it considered the lease terminated, and Smith had heard of Time's attitude in this regard, but just when Smith secured this information is not clear. At any rate, Smith was desirous of remaining in possession of the premises, and testified that he entered into the arrangement with Dorcich to pay him $175 a month to protect his interests. Smith and plaintiffs contemplated that a lease calling for $175 a month rental would be drafted, but such a lease was not signed because a certain deal Smith had pending failed to materialize. After this deal fell through, Smith continued to negotiate with Dorcich for a lower rental, and finally Dorcich agreed to accept $100 a month. A lease between plaintiffs and Smith so providing was executed on November 22, 1948, the lease to become effective December 1, 1948, and to continue until September 15, 1952.

Dorcich testified that he accepted the $175 a month from Smith from July to November because Smith was uncertain whether the Dorcich-Time Oil Company lease was still in effect. He admitted that at no time did he notify Time Oil that he was accepting $175 from Smith for the benefit of Time Oil. After the lease negotiated with Smith for $100 per month was executed on November 22, 1948, on November 23, 1948, the attorneys for plaintiffs formally notified Time Oil of the subletting. This letter states that plaintiffs are subletting to Smith on behalf of Time Oil in order to mitigate the damages; that Dorcich had tried to re-lease the premises at a higher rent, but was unsuccessful; that Dorcich had collected $175 a month from Smith for four months, which sums have been credited on plaintiffs' claim against Time Oil; that the Dorcich-Smith lease was entered into to protect and on behalf of Time Oil; that Dorcich intends to hold Time Oil for the balance due after deducting what is received from Smith.

The complaint filed by the plaintiffs is based on the theory that the reletting to Smith was on behalf of Time Oil to mitigate damages, and prays for the difference for the balance of the term between the $100 a month secured from Smith and the $250 per month provided in Time Oil's lease. The answer,

as amended, admits the execution of the lease; admits receipt on November 23, 1948, of the notification that Dorcich had leased to Smith for $100 per month; alleges that it received no notice of the subletting to Smith at $175 per month starting July 15, 1948; denies the other material allegations of the complaint; alleges that its lease was terminated and Time Oil was evicted on June 15, 1948, when Dorcich failed to restore the premises to their original condition after scraping the premises in April, 1948, at the request of Holt. Time Oil also cross-complained for damages caused by the claimed eviction, but the trial court found against defendant on this issue, and, since defendant has not appealed, the issues presented by the cross-complaint are not now involved.

So far as pertinent here, the trial court found that on June 25, 1948, Time Oil surrendered the premises and refused to pay any further rent to the plaintiffs; that during July, 1948, the plaintiffs rented the premises to Smith for $175 per month on a month-to-month basis; that Smith paid the plaintiffs rent at $175 per month until December 1, 1948; that on November 22, 1948, there was executed a written lease between Smith and the plaintiffs at a rental of $100 per month for a term commencing December 1, 1948, and ending September 15, 1952; that it is untrue that the rental to Smith at $175 and the $100 a month lease were on behalf or for the benefit of Time Oil, but said rentals were received by the plaintiffs for their own benefit; that plaintiffs did not suffer any damage by reason of the abandonment of the premises by defendant; that it is untrue that plaintiffs notified defendant that they were leasing the premises to Smith as alleged in the complaint; that plaintiffs failed to notify defendant that they were leasing the premises to Smith for $175 a month or for $100 a month. The court concluded that the acts of renting the premises to Smith at $175 per month, and entering into the lease with him for $100 a month without first notifying defendant that such acts were being done for its benefit, constituted an acceptance of the surrender of the premises and thus terminated the lease. Judgment was entered denying plaintiffs any relief on their complaint and denying defendant any relief for its cross-complaint, and plaintiffs appeal.

The key question is whether the evidence supports the finding that plaintiffs accepted a surrender of the lease from Time Oil. ▮ A surrender is the yielding up of an estate for years by the tenant to the landlord. ▮ A surrender by operation of law occurs when the parties do something which

would not be valid unless the lease was terminated, and which estops them from disputing the surrender. ■ Whether, in a given case, there has been a surrender is a question of fact. These principles are well settled. (See collection of cases 15 Cal.Jur. p. 792, § 209.) ■ It is equally well settled that where there has been an abandonment of the premises by the tenant, and the landlord thereafter does any material act so as to interfere with the right of the tenant to the absolute dominion of the premises, there is an eviction and the tenant is released. That operates as a surrender by operation of law. (See cases collected 15 Cal.Jur. p. 797, § 214.)

■ In the present case we have a clear abandonment by Time Oil, and the trial court so found. The question is whether the plaintiffs thereafter did any act inconsistent with the tenant's absolute dominion over the leased premises. The trial court has found that when the plaintiffs rented the premises to Smith in July, 1945, for $175 a month and accepted rent from him for four months without notifying Time Oil of what they were doing, and when, on November 22, 1948, they entered into a lease with Smith for $100 per month for the balance of the term and did not notify Time Oil until the lease was executed, such acts were inconsistent with defendant's absolute dominion over the leased premises and resulted in a surrender by operation of law. We are of the opinion that the evidence supports this interpretation of the facts.

■ When a tenant abandons the premises the landlord has several remedies. In *Kulawitz* v. *Pacific etc. Paper Co.*, 25 Cal.2d 664, 671 [155 P.2d 24], the court summarized these remedies as follows: "Upon surrender of possession by the lessee before the expiration of the lease term, the lessor had three remedies: (1) To consider the lease as still in existence and sue for the unpaid rent as it became due for the unexpired portion of the term; (2) to treat the lease as terminated and retake possession for its own account; or (3) to retake possession for the lessee's account and relet the premises, holding the lessee for the difference between the lease rentals and what it was able in good faith to procure by reletting." (See, also, *Siller* v. *Dunn*, 103 Cal.App. 154 [284 P. 232].)

It is in connection with the third remedy enumerated above that most of the cases have arisen. ■ The landlord, upon an abandonment by the tenant, may retake possession of the premises on behalf of the tenant, relet the premises for the tenant's account, and hold the tenant for the difference. If

the landlord simply takes possession of the premises and relets them at a lower rent, such act is inconsistent with the absolute dominion of the tenant, and constitutes an acceptance of the implied offer to surrender, and terminates the lease. But if he notifies the tenant that the retaking is on behalf of the tenant, and that he intends to sublet to another on behalf of the tenant to mitigate damages, the reletting does not operate as an acceptance of the abandonment, and no surrender by operation of law results. Some notification to the tenant is required because, although he has abandoned the premises, his title to the term nevertheless continues, unless the landlord accepts the surrender. These principles are well settled. (See annotations 3 A.L.R. 1080; 52 A.L.R. 154; 61 A.L.R. 773; 110 A.L.R. 368.)

One of the leading cases in this state is *Welcome* v. *Hess,* 90 Cal. 507 [27 P. 369, 25 Am.St.Rep. 145]. There, a tenant with a five-year lease abandoned the premises and returned the keys to the landlord after remaining in possession and paying rent for less than a year. The landlord sued the tenant for several months' accrued rent as it fell due, and then requested the tenant to return. The tenant refused, whereupon the landlord took possession of the premises and re-leased them at a rental less than provided in the original lease, and for a term in excess of that provided in that lease. The court held this to constitute an acceptance of the surrender. It stated (p. 514) : "In taking possession the landlord did not announce his intention to continue to hold the tenants. He relet without notifying the defendants that he should do so on their account. He relet for a period longer than the remainder of their term; thus showing plainly that he was acting in his own right, and not as their self-constituted agent. Under such circumstances, he cannot say that he did not accept the surrender."

The rule of *Welcome* v. *Hess, supra,* has frequently been followed. In *Bernard* v. *Renard,* 175 Cal. 230 [165 P. 694, 3 A.L.R. 1076], a 10-year lease was executed to commence after the completion of a building to be erected on the leased premises by the landlord. Before the building was completed the parties got into a disagreement, and the tenant gave notice of rescission. When the building was completed a short time later the landlord tendered the keys to the tenant, who refused to accept them or to pay rent. The lessor tried to secure another tenant, placed "to-let" signs on the building, listed it for rent with various brokers, rented it for short

intervals to third persons, and, two years after completion, sold it. At no time after tendering the keys did the landlord communicate with the tenant. In an action brought to recover rent the court held that the doctrine of *Welcome* v. *Hess, supra,* was applicable, and stated (p. 233) : "Upon these facts, as to which there is no conflict, it seems clear to us that the doctrine of *Welcome* v. *Hess,* . . . is applicable. It is true that the facts of this case differ in some particulars from those of *Welcome* v. *Hess, supra,* but they differ in no such way as to make the conclusion arrived at there inapplicable here. The real thing there decided was that where the premises are abandoned by the tenant, who avows his intention not to be bound by his lease, the assumption of actual possession and absolute control of the premises by the lessor, including efforts to let and the actual reletting thereof to others, without saying or doing anything to so qualify his acts as to indicate that he is not acting in his own right and for his own benefit as owner entitled to possession, without saying or doing anything to indicate that he is acting for the benefit of the lessee or reletting on the lessee's account and for his benefit, he will not be heard thereafter to say that he has not accepted a surrender of the term."

*Boswell* v. *Merrill,* 121 Cal.App. 476 [9 P.2d 341], is another case in point. It involved a lease of a gasoline station for a fixed term. During this term the tenant served a notice of termination and delivered up the keys. The landlord notified the tenant that he refused to recognize the tenant's right to terminate, demanded back rent, and stated that he intended to hold the tenant liable under the lease. A few days after the tenant abandoned the premises the landlord leased them to a third person for the balance of the original term, but at a rental substantially below that in the original lease. No notice was given to the tenant of the reletting. The court held that the rule announced in *Rehkopf* v. *Wirz,* 31 Cal.App. 695, 696 [161 P. 285], was applicable, and quoted from that case as follows (p. 478) : "Where a tenant abandons the leased property and repudiates the lease, the landlord may accept possession of the property for the benefit of the tenant and relet the same, and thereupon may maintain an action for damages for the difference between what he was able in good faith to let the property for and the amount provided to be paid under the lease agreement. [Citing a case.] But a lessor who chooses to follow that course must in some manner give the lessee information that

he is accepting such possession for the benefit of the tenant and not in his own right and for his own benefit. If the lessor takes possession of property delivered to him by his tenant and does so unqualifiedly, he thereby releases the tenant. [Citing two cases, including *Welcome* v. *Hess.*] An unqualified taking of possession by the lessor and reletting of the premises by him as owner to new tenants is inconsistent with the continuing force of the original lease. If done without the consent of the tenant to such interference, it is an eviction, and the tenant will be released. If done pursuant to the tenant's attempted abandonment, it is an acceptance of the surrender and likewise releases the tenant.''

Appellants argue that these cases do not establish that notice must be given to the tenant before the reletting, but simply hold that notice must be given within a reasonable time. Even if that were the rule, the basic question is the intent with which the landlord retakes possession and relets. If, objectively, he performs any act inconsistent with the continuance of the lease and in violation of the dominion of the tenant over the property, a surrender results. These are basically factual matters. If the evidence is subject to two possible and reasonable inferences, the trial court's interpretation is conclusive on this court. Here, the landlord, after the abandonment, retook possession and rented to Smith on a month-to-month basis for four months. No notice was given to Time Oil that this was being done on its account. There is some confusing evidence about a conversation between the counsel of the two parties in which it is claimed that counsel for Time Oil suggested that Dorcich lease to Smith, but there is no evidence that counsel for Time Oil agreed that this could or should be done on account of Time Oil. Appellants urge that until the formal lease with Smith was executed, Smith was holding the property under his sublease with Time Oil, and that unless they accepted the rent from Smith, they would be accused of failing to mitigate damages. This contention assumes the very point at issue. The trial court found that Time Oil abandoned the premises in June of 1948, so that dealings thereafter with Smith could not be predicated on the theory that Time Oil recognized that Smith was holding as its subtenant. ■ A landlord does not have the legal right to negotiate with a subtenant and to accept rent from him without the consent or knowledge of the tenant. The trial court could have interpreted the evidence as showing that Time Oil knew or should have known

what Dorcich was doing, but it was not compelled to accept that interpretation. It chose to find that the renting to Smith for four months at $175 a month was an act inconsistent with the continuance of the lease, and amounted to an acceptance of the proffered surrender. That is a possible and reasonable interpretation of the evidence, and is binding upon us.

Appellants placed much stress on their notice to Time Oil dated November 23, 1948, and point out that notice was given before the lease to Smith was to become effective. Of course, the execution of the lease on November 22, 1948, amounted to a completed binding contract even though it was not to become effective until December 1, 1948. The notice was not given until after the lease was executed. ■ Normally, the notice must be given before the reletting to allow the tenant to object or make other arrangements if he so desires. The court found that the execution of the lease on November 22, 1948, amounted to the acceptance of the proffered surrender. That finding is supported, so that what happened thereafter is immaterial.

The trial judge at the conclusion of the trial, and before findings were prepared, filed a well reasoned memorandum opinion. In that opinion he stated: ''The Court finds on the issue of acceptance of the surrender by the plaintiff, that under the facts and the law of this state the Court is compelled, although very reluctantly, to find that the plaintiff must be held to have legally accepted the surrender by Time Oil Company. This was done by first letting the premises to Smith from month to month, and secondly by letting the premises to Smith by written lease for the remainder of the term before notifying Time Oil Company that they would do so to mitigate the damages and hold Time to its lease.''

The appellants make much of the fact that the trial judge expressed his ''reluctance'' to find a surrender, and contend that he did so solely because he felt that the prior decided cases had determined that the notice from the landlord must be sent to the tenant notifying him of the re-leasing *before* the second lease is executed, and that because the notice was sent on the 23d and the lease executed on the 22d, the notice here involved was sent too late. Neither the trial court's opinion nor its findings are based on any such narrow theory. Both are based on the conclusion that, because Dorcich rented to Smith for four months after July 15, 1948, and because the notice of the 23d was too late, the landlord had accepted the surrender. The trial judge was reluctant to come to this

conclusion because, as he stated in his opinion, he felt that Time Oil's action in claiming an eviction based upon the smoothing of the surface of the premises by Dorcich at the request of Holt and without permission of Time Oil, was "a clear subterfuge and such claim has no basis in fact." It is undoubtedly true that Time Oil deliberately tried to abandon its lease without cause or legal justification, and tried to take advantage improperly of Dorcich's acts in levelling the premises by claiming an eviction. But in spite of those acts it was still in legal possession of the premises. Plaintiffs could have sat back and sued for each month's rent as it fell due. This, they elected not to do. They elected to relet and to try to hold Time Oil for the loss sustained. To be entitled to this remedy they had to be careful not to exert dominion over the leased premises. They actually exerted such dominion in two respects. This amounted to a surrender by operation of law. The fact that Time Oil may have been guilty of reprehensible conduct has no relation to the legal consequences flowing from their own conduct.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.) J., concurred.