[Civ. No. 4956. Fourth Dist. June 3, 1955.]

JOHN E. DUERKSEN et al., Appellants, v. G. L. KLASSEN et al., Respondents.

Woodruff & Williams for Appellants.

Kendall & Howell for Respondents.

GRIFFIN, J.—In 1949, plaintiffs, appellants herein, the lessors, leased, in writing, 160 acres of undeveloped farm land (on which there were no improvements) to defendants and respondents, the lessees, for a period of three years commencing January 1, 1949, and ending December 31, 1951, at $4,000 per year. The lease provided that lessees may have the option to renew the lease for two additional years commencing January 1, 1952, and ending December 31, 1953. Lessees entered into possession and paid the rental for the three-year term and on January 30, 1952, gave lessors written notice of the exercise of the option to renew, and paid $4,000 rental for the first year of the renewal period. The installment of rent due on February 1, 1953, for the second year of the renewal period, was not paid and lessors brought this action for said sum of $4,000.

Defendants' answer admits the due execution of the lease and that the payments indicated were made, but claims that no sum was then due or unpaid; that the lease provided lessee must level the land and that lessors would pay lessee out of the second year's rent, the cost of the leveling up to the sum of $1,000; that in addition, it was agreed therein that there was a legal action pending in regard to leveling costs for the year 1948, totaling $7,700; that in the event lessors were successful in reducing that sum in said suit, any reduction accomplished would be applied by lessors to the payment of the cost to

lessee in their leveling of the land which exceeded the aforesaid sum of $1,000.

It is claimed in the answer that defendants expended $4,303.45 as leveling costs; that plaintiffs failed to account to defendants for any reduction, and that plaintiffs did receive such reduction in the lawsuit and accordingly defendants were entitled to a rent credit of $3,303.45. No counterclaim or cross-complaint was filed by defendants. As a special defense defendants claim that there was a failure of water supply and plaintiffs orally agreed that the renewal of the lease should be only for one year; that defendants advised plaintiffs they would not occupy the land for the year 1953, at the rental provided in the lease under those circumstances, and plaintiffs then notified defendants in writing that said written lease was breached and terminated and plaintiffs thereupon attempted to secure other lessees for said premises but no such lease was consummated.

The court found generally in favor of defendants; that defendants did not pay the installment rent of $4,000 due under the terms of the written lease on February 1, 1953, but found it was not true that such sum was due and owing plaintiffs because plaintiffs and defendants mutually terminated said lease on that day. It then found that the issue as to whether defendants were entitled to any offsets on account of land leveling was not determined in that action because the court found the lease was mutually terminated. Judgment was entered for defendants accordingly.

The sole contention on this appeal is whether the evidence produced was sufficient to support the decision that the parties mutually terminated their lease on February 1, 1953. The evidence in the record pertaining to this subject matter is rather sketchy. Most of the testimony related to the claim for the cost of leveling the land. Defendants paid the $4,000 yearly rental, went on the land, leveled a great portion of it, and grew crops thereon for the three-year term prescribed. Apparently defendants, with full knowledge of plaintiffs, let the premises to one Webb, who farmed it during the year 1951, and Webb paid the $4,000 yearly rental which was turned over to plaintiffs by defendants.

It appears that on December 14, 1951, plaintiffs' attorney sent a letter to defendants notifying them that defendants were in violation of the terms of their lease in two ways, i. e. (1) that the leveling work agreed to be performed was not sufficiently performed to comply with the agreement; (2) that

lessees allowed noxious weeds to infest the premises in violation of the lease. Accordingly, lessors "do hereby elect to terminate said lease as of December 31, 1951, the expiration date of said lease . . .", and "inform you that you have forfeited all rights to the option" and you are "requested to remove from said premises . . . before December 31, 1951."

The record shows that in the latter part of January, or early part of February, 1952, Duerksen, Klassen and Webb met at a cotton gin company which financed many of the farmers, and there was discussed between them the possibility of Webb taking over the acreage under direct lease from plaintiffs and accordingly defendants were not to renew their lease with plaintiffs. Webb testified it was there agreed that the place would go back to plaintiffs and Webb would take over on a ¼ crop rent basis if he could get financed to put in a well; that the gin company would not finance it and that it was finally agreed that defendants would pay the $4,000 for that year and Webb would be put on the property at a ¼ crop rental to Klassen, and for the next year Webb was to make his own deal with Duerksen. At that time defendants contended they had leveled the property in accordance with their agreement with plaintiffs but that the water supply was such that they were compelled to use water from their adjoining property and wells to irrigate this acreage. It appears that subsequent to this occasion defendants sold this adjoining property and no longer were able to obtain water from it, and accordingly it would be of no value to them without water; that this matter was discussed with plaintiffs by Webb after he had finished the 1952 crop, and Webb offered to put up $4,000 on account of the pumping plant and pay a ¼ crop rent for the lease on the property for 1953; that plaintiffs insisted on $10,000 to finance the deal but he could not finance it. There is evidence that Webb and plaintiff Duerksen went to a pump company in January, 1953, and secured an estimate of costs for the necessary drilling of the well and installation of a pump, at $10,000.

The record shows that on February 20, 1952, plaintiffs' attorney sent a letter to defendants stating:

"After our many conversations and discussions in regard to the termination or renewal of option period of the lease . . . Duerksen . . . will refrain from taking action on the failure on your part to perform all the terms and conditions of said lease at least for the time being and will consent to your

continued tenancy on said premises under the option provisions of said lease without waiver of any prior defaults . . .''

On January 30, 1952, defendants paid the $4,000 to exercise the option for the rest of the period and sent a check with a letter to plaintiffs indicating defendants' intention to renew the lease, but claimed that defendants had not received an accounting from plaintiffs as to money received as a result of the lawsuit over the leveling costs. Webb remained in possession of the land and farmed it. On February 2, 1953, plaintiffs sent defendants (who then resided in Los Angeles County) a telegram reading: "LEASE PAYMENT PAST DUE LEASE BREACHED UNLESS PAID TODAY.'' It appears that Webb moved off of the property about this time and no further payments were made by defendants on the lease. In the latter part of February, 1953, defendants received a telephone call from plaintiffs in which conversation plaintiff Duerksen expressed his disappointment because defendants had not taken over the property for that year and defendants told plaintiffs they did not see why they should be disappointed because plaintiffs had been wanting the place back all of this time and since they had their understanding at the gin that plaintiffs were going to lease the land to someone else because of the water problem and because of the telegram they sent they should not be disappointed because Webbs were moving off of the property. Nothing further was heard from plaintiffs after this conversation. On March 10, 1953, demand was made upon defendants for the $4,000 claimed rent due on February 1, 1953.

The evidence shows that immediately after February 1, 1953, plaintiffs endeavored to secure other lessees for the premises upon the basis of $50 per acre if lessees furnished the water, and $60 per acre if lessors drilled a well and furnished it. A similar demand was made of Webb if he would continue to stay in possession of the property and desired to secure a lease. Similar propositions were submitted to other prospective lessees, without success. There was evidence that about this time Duerksen went on the property and burned the weeds; that sheep were pastured on the premises, and several hives of bees and some big equipment were kept there. He denied knowledge of any arrangements about the sheep grazing on the property and the bees being placed there. Defendants claim they did not have possession of the property or authorize any of this activity or exercise any control over it after Webb moved onto it.

It is defendants' position that in view of the previous arrangements and conversations with plaintiffs, the telegram sent by plaintiffs to them on February 1, 1953, regardless of its technical wording, amounted to a notice that the lease, as far as defendants were concerned, was terminated and accordingly plaintiffs took possession of the property but were unable to re-lease it due to the fact of the great increase in rental demanded and the requirement that the tenant drill a well on the premises; that defendants, in accordance with the notice to pay rent or quit the premises, and the previous oral agreements, surrendered possession and plaintiffs took over such possession; that there was no indication in the notice that plaintiffs were taking possession and attempting to lease the property for defendants' benefit, and accordingly a mutual termination of defendants' lease resulted. . Apparently this was the construction placed upon the transaction by the trial court. Plaintiffs cite Black's Law Dictionary, Third Edition, in defining the word "breached," as used in the telegram, as the "breaking or violating of a law, right or duty, either by commission or omission." Defendants' answer to this is that these farmers were probably not possessed of Black's Law Dictionary at the time and accordingly used language which was known to them, and that defendants believed that they were told to pay up or quit the premises.

In *Kulawitz* v. *Pacific etc. Paper Co.*, 25 Cal.2d 664 [155 P.2d 24], it was held (quoting from the syllabus) that:

"Upon surrender of possession by a lessee before the expiration of the lease term, the lessor has three remedies: (1) To consider the lease as still in existence and sue for the unpaid rent as it becomes due; (2) to treat the lease as terminated and retake possession for his own account; or (3) to retake possession for the lessee's account and relet the premises, holding the lessee for the difference between the rentals and what the lessor is able in good faith to procure by reletting."

Although the evidence here presented might well have supported a contrary conclusion it does indicate that defendants made payments of all rents due until they could no longer obtain a water supply from their property; that plaintiffs knew that the only water supply was from such source when the lease was executed and that the land had no such rental value without a supply of water; that this condition was discussed with plaintiffs before defendants were willing to continue under the lease of the property for a period longer than one

year; that in fact plaintiffs had given defendants notice that the lease had been violated for failure to properly care for the property and accordingly the lease was "terminated" and that a renewal of the lease would not be permitted.

There is some evidence that plaintiffs let the Webbs have possession of the property for the one year, conditioned that defendants pay the amount due for that year and that some arrangements would be worked out with the Webbs or other persons whereby water could be produced on the property, and defendants would then be notified of that fact. Apparently defendants had no further notice from plaintiffs of the arrangements made, and accordingly considered the telegram a notice to pay the rent or quit the premises, and they refused to pay and Webb surrendered them to plaintiffs. The lease made no provision for the retaking of the property by the lessors and leasing it for the benefit of the lessees.

While the evidence is in conflict as to whether plaintiffs took possession thereafter in their own behalf or in behalf of defendants, the trial court was justified in believing that plaintiffs did take possession of the property for themselves and considered defendants' lease option terminated and that defendants acquiesced in this termination and surrendered the premises. (*Downing* v. *Cutting Packing Co.*, 183 Cal. 91 [190 P. 455]; *Dorcich* v. *Time Oil Co.*, 103 Cal.App.2d 677 [230 P.2d 10]; *De La Motte* v. *Rucker*, 55 Cal.App.2d 226, 229 [130 P.2d 444].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.