In re Melanie E. LOMAX, Debtor.

**MID–WILSHIRE ASSOCIATES, Appellant,**

v.

**Melanie E. LOMAX, Appellee.**

**BAP No. CC–95–1931–VHBa.
Bankruptcy No. LA94–48523.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Feb. 22, 1996.

Decided April 18, 1996.

Bruce G. Landau, Beverly Hills, CA, for Appellant.

Richard Malatt, Los Angeles, CA, for Appellee.

Before: VOLINN, HAGAN, and BAUM,[1] Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

The debtor abandoned her leased office space two years prepetition, with 46 months remaining under the lease term. The lessor filed claims for two months past due rent owing as of the date of abandonment and for the remaining rent due under the lease term up to the date it filed its proofs of claim. Section 502(b)(6) of the Bankruptcy Code circumscribes allowance of a claim based on damages under a terminated lease that otherwise would be valid and enforceable under state law.[2] Based on § 502(b)(6), the bankruptcy court disallowed a substantial portion of the lessor's claims, limiting its claim to the two months rent past due as of the date of the abandonment and to damages equal to one year of lost rent thereafter. We AFFIRM.

---

1. Hon. Redfield T. Baum, Bankruptcy Judge for the District of Arizona, sitting by designation.

2. Pursuant to § 502, the court shall allow claims except to the extent that—
   (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
      (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
         (i) the date of the filing of the petition; and
         (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
      (B) any unpaid rent due under such lease without acceleration, on the earlier of such dates....

11 U.S.C. § 502(b)(6).

## FACTS AND PROCEEDINGS BELOW

The debtor-in-possession is Melanie E. Lomax, a Los Angeles attorney. On August 1, 1986, Lomax and two law partners took possession of offices leased from appellant Mid–Wilshire Associates. The lease had a term of ten years, terminating July 31, 1996, with a monthly rent of $4,405.33.

The law firm apparently dissolved; one partner left in 1987, the second in 1989. Lomax vacated the premises in May 1992, but continued to pay rent until October 1992. When the October rent was not timely paid, Mid–Wilshire sent Lomax a "Notice of Belief of Abandonment" dated November 11, 1992. Drafted as required by Cal.Civ.Code § 1951.3 (West 1996), the notice informed Lomax that if she failed to timely respond and dispute her abandonment, the premises would be deemed abandoned and the lease would terminate on December 2, 1992.[3] Lomax did not respond.

Mid–Wilshire took no further action until July 1994, when it filed an action in state court against the lessees and others, alleging, inter alia, "breach of written agreement (lease)" against Lomax and her former partners. Lomax filed a cross-claim.[4] On October 14, 1994, the state court, without reaching a determination of Lomax's cross-claim, filed an order granting summary adjudication of the damages issue. The court awarded Mid–Wilshire damages of $197,505.13 (equalling the full balance of rent due for the lease term with credit for a security deposit), $9,647.11 in interest, and attorneys fees and costs. Lomax filed a Chapter 11 petition on October 21, 1994.

In March 1995, Mid–Wilshire filed three proofs of claim. It sought $207,152.00 based on the October 14, 1994 state court summary adjudication, $995.00 for rent from October 14 until the bankruptcy filing on October 21,

1994, and $23,440.00 for rent from October 21 until March 31, 1995 (the date the claims were filed).[5] The debtor objected to the claims, contending that pursuant to 11 U.S.C. § 502(b)(6), Mid–Wilshire was entitled to only $61,670.00, which equalled the rent due for the months of October and November, which was owing prior to the termination of the lease, and one year of rent payments.

The court sustained the debtor's objection. By order entered August 14, 1995, it determined that allowance of the claim based on rent due was circumscribed by § 502(b)(6). The court allowed Mid–Wilshire a claim equal to 14 months of rent. Mid–Wilshire filed a timely notice of appeal.

## STANDARD OF REVIEW

■ The facts are undisputed; the issue addresses the court's conclusion of law, reviewed de novo. In re Moreggia & Sons, Inc., 852 F.2d 1179, 1181 (9th Cir.1988).

## ISSUE PRESENTED

Whether the court committed reversible error by concluding that the lessor's notice of belief of abandonment and statement of termination of lease (on December 2, 1992) constituted a surrender or repossession of the leased property so as to trigger the one-year limitation of § 502(b)(6)(A)(ii), when the debtor had already vacated the premises.

## DISCUSSION

■ We observe the distinction between rent owing under a lease and damages equal to lost rent arising from wrongful termination of the lease. The former is a real property right, the latter a contract right. Section 502(b)(6) does not limit a landlord's real property interest in rent, but does circumscribe the damages available under a terminated lease. According to the language

---

3. In pertinent part the notice states:

> The real property will be deemed abandoned within the meaning of section 1951.2 of the Civil Code *and your lease will terminate on December 2, 1992,* unless before such date the undersigned receives at the address indicated below a written notice from you stating both of the following:
> (1) Your intent not to abandon the real property.

> (2) An address at which you may be served by certified mail in any action for unlawful detainer of the real property.
> (Emphasis supplied.)

4. This claim was ultimately dismissed.

5. In her brief, Lomax asserts that she contested whether she was the breaching party, but does not dispute the issue for practical purposes.

of subsection (A)(ii), a lease is terminated by the landlord's repossession, or the tenant's surrender, of the leased premises.

Section 502(b)(6) is designed to "compensate a landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 352–354 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 62–65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5849, 6309.

■ A lease may be terminated by a non-breaching party upon the other's default, but cannot be terminated unilaterally by the breaching party. Since Lomax was the breaching party, she could not unilaterally effect a surrender of, and thereby terminate, the lease. Thus Mid–Wilshire can and does contend that the triggering events of subsection (A)(ii), repossession or surrender, never occurred. Mid–Wilshire contends that it did not accept the tenant's surrender, nor repossess the premises, and therefore, under § 502(b)(6), it is entitled to rent (as opposed to damages for loss of rent) until the filing of the petition and one year beyond as allowed by § 502(b)(6)(A)(i).

■ Mid–Wilshire's argument rests on the classic right of a landlord to ignore the tenant's abandonment and to treat the lease as continuing, suing for rent as it becomes due. A lessee's offer of surrender does not terminate a lease nor the lessor's right to rents thereunder. However, "Acceptance of the abandonment operates as a surrender of the lease and extinguishes the tenant's rental obligation." 6 H. Miller & M. Starr, *Current Law of Cal. Real Estate 2d* § 18:129 (1993), citing *Bernard v. Renard,* 175 Cal. 230, 233–34, 165 P. 694 (1917); *Rognier v. Harnett,* 45 Cal.App.2d 570, 574–75, 114 P.2d 654 (1941). "[S]urrender of a leasehold requires acceptance by the landlord—either implicit acceptance or explicit acceptance." *In re Iron–Oak Supply Corp.,* 169 B.R. 414, 418 ((Bankr. E.D.Cal.1994).

These common-law concepts created a dilemma for a landlord with abandoned premises. If he left the premises vacant, the tenant could be sued for the rent as it became due.

Taking this route, possibly without success, exposed the landlord to a defense of failure to mitigate damages. On the other hand, if the premises were reentered or re-let at a loss, the tenant could assert that the offer of surrender had been accepted, and therefore no damages accrued. The landlord's solution was to reenter and contend the premises were being re-let on behalf of the tenant. *See* 4 B.E. Witkin, *Summary of California Law: Real Property* § 672 (9th ed. 1987).

In 1970, California enacted legislation addressing the problem. As a general rule, and subject to the exception discussed below, California imposes on the landlord as a statutory obligation, the duty to avoid the consequences of abandonment, while preserving the right to damages for rent lost through the lessee's breach. Cal.Civ.Code § 1951.2 (West 1996). Under subsections (a)(2) and (a)(3) of § 1951.2, the lessee is granted a defense regarding losses that can be proven to be reasonably avoided. Subsection (d) preserves the landlord's right to damages when actions are taken to mitigate losses. Functionally, the statute accomplishes its goal by deeming the lease as terminated in the event the lessee abandons the property. Through the termination of the lease upon abandonment, § 1951.2 converts a landlord's continuing right to rent under the lease into a damage claim for rent lost through the tenant's abandonment. Pursuant to subsection (a):

> Except as otherwise provided in Section 1951.4, *if a lessee of real property breaches the lease and abandons the property before the end of the term* or if his right to possession is terminated by the lessor because of a breach of the lease, *the lease terminates.*

Cal.Civ.Code § 1951.2(a) (West 1996) (emphasis added).

Cal.Civ.Code § 1951.4 (West 1996), the exception noted in § 1951.2, preserves the landlord's right to rents. Section 1951.4 allows the parties to contract away the landlord's duty to relet under § 1951.2. The landlord is permitted to treat the lease as continuing after the tenant's abandonment and sue for rent as it becomes due under the lease. The lease must contain language providing for

this remedy and must also grant the tenant a right to sublet the premises which will not be unreasonably withheld. Section 1951.4 thus returns responsibility for avoiding the consequences of the vacancy to the tenant. The operative language of § 1951.4 states:

> Even though a lessee of real property has breached the lease and abandoned the property, *the lease continues in effect for so long as the lessor does not terminate the lessee's right to possession,* and the lessor may enforce all the lessor's rights and remedies under the lease, including the right to recover the rent as it becomes due under the lease....

Cal.Civ.Code § 1951.4(b) (West 1996) (emphasis added).

In sum, a California lessor with abandoned premises has two mutually exclusive remedies: deem the lease terminated and seek damages pursuant to § 1951.2, or, under § 1951.4, continue to perform under the lease and seek rent as it becomes due.

■ The arguments of the parties focus on the question of whether a surrender was effected under § 502(b)(6)(A)(ii) so as to trigger the one-year limitation on the lessor's claim. Mid–Wilshire asserts it did not explicitly accept surrender or perform any act which could be construed as implicit acceptance, and therefore, rent continued to be due. The debtor contends that the lessor's "Notice of Belief of Abandonment" which terminated the lease upon her failure to timely respond constituted both an implicit acceptance of the surrender and a repossession of the property by the landlord.

Mid–Wilshire asserts in its Appellant's brief, "In determining the amount of allowable un-paid pre-petition rent, the Court erroneously concluded that said lease terminated on December 2, 1992." However, this assertion is incorrect because Mid–Wilshire chose to allow the lease to terminate under Cal.Civ.Code § 1951.3 by its Notice of Belief

of Abandonment (and termination). The question is whether this termination of the lease, without further action by the landlord, satisfies the Code's additional requirement of repossession or surrender.

Lease termination is inconsistent with rejection of an offer of surrender. *See, e.g.,* Restatement (Second) of Property (Landlord–Tenant):

> [I]f the tenant abandons the leased property, the landlord is under no duty to attempt to relet the leased property for the balance of the term of the lease ... but the landlord may:
>
> (a) accept the tenant's offer of surrender of the leased property, which offer is inherent in the abandonment, and thereby terminate the lease, leaving the tenant liable only for rent accrued before the acceptance and damage caused by the abandonment.

§ 12.1(3)(a) & comment i. (1977) ("The tenant does not end his obligation to pay rent by abandoning the leased property, unless the landlord accepts what is in effect the tenant's offer to surrender the leased property, thereby terminating the lease").

Thus the debtor has the better argument. Termination of a lease based on the lessee's abandonment is inconsistent with the lessee's right of possession. A valid termination of a lease would terminate any possessory rights of an absent tenant, because these rights arise solely from the lease. While a lessor need not expressly refuse an offer of surrender to prevent a later ruling that the offer was implicitly accepted, a lessor cannot adopt a position which is contrary to refusal, such as terminating the lease. Mid–Wilshire's termination of the lease therefore constituted an acceptance of the debtor's offer of surrender under state law.[6]

Mid–Wilshire also argues that it never reasserted possession and could not be held to have done so until it filed an unlawful

6. Mid–Wilshire has also raised an issue of collateral estoppel relative to whether the ruling of the superior court holding the debtor liable for all of the unpaid rent precludes reduction of its claim under § 502(b)(6). The state court struck the word "judgment" from the proposed "Order Granting Summary Judgment" and interlineated

"adjudication." The court also noted that final judgment was yet to be entered at the conclusion of the matter. Because the state court order was therefore not a final order, but rather a summary adjudication in ongoing litigation, it is not entitled to collateral estoppel effect.

detainer action. Mid–Wilshire cites two cases for this proposition, *In re Windmill Farms, Inc.,* 841 F.2d 1467 (9th Cir.1988); *In re Escondido West Travelodge,* 52 B.R. 376, 379 (S.D.Cal.1985). These cases do not support the lessor's position; the discussion in both cases concerns whether termination occurs at the inception or completion of eviction proceedings, a question not relevant here. It would be useless to require a landlord to undertake an action for unlawful detainer after the premises have been abandoned. Thus, where the tenant surrenders the premises before the proceeding is commenced, there can be no unlawful detainer. 4 Witkin § 686 (citing *Markham v. Fralick,* 2 Cal.2d 221, 225, 39 P.2d 804 (1934).

## CONCLUSION

Mid–Wilshire's election to terminate the lease was an acceptance of the debtor's offer of surrender, restoring possession of the premises to the lessor, and triggering the limitations of damages to one year and unpaid rent to two months under § 502(b)(6). The state court's ruling did not preclude the bankruptcy court's hearing of these issues.

AFFIRMED.