[Civ. No. 9144. First Appellate District, Division Two.—August 8, 1934.]

MAURICE MERCANTILE CO. (a Corporation), Respondent, v. AMERICAN EMPLOYERS' INSURANCE COMPANY (a Corporation), Appellant.

AMERICAN EMPLOYERS' INSURANCE COMPANY (a Corporation), Appellant, v. MAURICE ROSENTHAL, INC., (a Corporation), Respondent.

Redman, Alexander & Bacon and A. B. Weiler for Appellant.

Joseph E. Bien and Werner Olds for Respondent.

SCHMIDT, J., *pro tem.*—On February 7, 1927, Maurice Rosenthal, Inc. (assignor of respondent), entered into a lease of a store in Fresno for five years at a rental of $600 per month payable monthly in advance. Said lessee applied

to appellant surety company to issue a $5,000 bond guaranteeing the lease, said lease requiring a surety company bond "as surety thereon in the penal sum of Five Thousand (5,000) Dollars for the faithful performance by the lessee, . . . of all the terms, conditions and covenants in this lease provided by it to be performed, observed and kept". Application to the surety was in writing and provided among other things that the applicant would pay annually in advance the premium of $75 on the bond and would "indemnify and keep amply indemnified the corporation from and against any and all loss costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which the corporation shall or may, for any cause, at any time, sustain or incur or be put to, by reason or in consequence of the corporation having executed said bond". At the same time the lessee delivered $3,000 in cash collateral to appellant as part security for the $5,000 bond under a written agreement that provided that this $3,000 was given as security not only for the claims of appellant arising by reason of the execution of the $5,000 bond, but also for such that might arise under the contract between the appellant and said lessee. After receiving the $3,000 appellant executed its $5,000 bond guaranteeing the performance of the lease by said lessee. Said lessee defaulted in the monthly rent of $600 due December 7, 1928. It had become involved in financial difficulties and a petition of involuntary bankruptcy was filed against it on January 4, 1929. Demand was made upon respondent for the payment of this rent. It was not paid. January 7, 1929, another $600 became due and was not paid and default was likewise made in the payment of rent due February 7, 1929. On February 27, 1929, a notice to pay rent or quit was served on the lessee. The portion thereof which is necessary to the decision herein being as follows: "You are hereby notified that you are required, within three (3) days after the service of this notice upon you, exclusive of the day of service, to pay the rent of those certain premises . . . said rent amounting to the sum of one thousand eight hundred dollars ($1,800), being the monthly instalments of rent of the said premises for the months commencing December 8, 1928, January 8, 1929, and February 8, 1929, at the rate of six hundred dollars ($600) per month . . . If you do not pay the said rent

within the said period of three (3) days hereinabove referred to, you are required, within the said period, to surrender and deliver up possession of the said premises to the undersigned, or the undersigned will institute legal proceedings against you for the recovery of the possession of said premises, with treble rents." On receipt of this notice the lessee Maurice Rosenthal, Inc., assignor of respondent, quit the premises within the three days. Thereafter lessor made seasonable attempts to rent the premises described in the lease, but could not do so until after October, 1929, at which time more than $5,000 in rent would have been due and unpaid under the terms of the lease. Appellant as the surety on the aforementioned $5,000 bond upon which it had received only $3,000 cash indemnity paid $5,000 to the lessor. Some months subsequent to the service of the three-day notice to quit and the quitting by respondent's assignor the original lessee, respondent's assignor made a composition in the bankruptcy court with its creditors and was discharged by the bankruptcy court. It thereafter assigned to respondent whatever rights it had to recover from appellant the $3,000 indemnity deposited by it with appellant. Action was then commenced by respondent for the sum of $1200 on the theory that only $1800 rent was due when the notice to quit was given and therefore the balance of the $3,000, namely, $1200, should be returned. Appellant filed a cross-complaint against the lessee, the respondent's assignor, for its legal expenses claiming it had engaged counsel when respondent's assignor had defaulted and the bankruptcy petition had been filed. In addition to that legal expense, appellant claimed the legal expense of the defense of the present action. The trial court held that when the notice to quit was given and the tenant actually quit, all liability under the lease ceased, including the liability of appellant as guarantor except for the $1800 due and unpaid at the time of the service of the notice to quit and gave judgment to respondent for the $1200 less $75 unpaid premium without deducting anything therefrom for counsel fees claimed. The appellant appeals from that judgment, claiming that the trial court erred in both particulars.

The pertinent part of the lease on the question of remedies of the lessor reads as follows: "The party of the second part (lessee) further agrees that if the rent is not paid as here-

inbefore provided, . . . then and in any of said cases, the party of the first part, (lessor) . . . lawfully may immediately or at any time thereafter and without demand or notice, *enter* into or upon the said premises and expel all persons therefrom and *terminate* this lease.''

The first question involved is—Could the fact that the landlord gave the said three-day notice under sections 1161 et seq. of the Code of Civil Procedure and the lessee delivered up possession in accordance with the said notice, cancel the lease and relieve the lessee from the payment of any further rent under said lease? This question is answered in the affirmative by *Costello* v. *Martin Brothers*, 74 Cal. App. 782 [241 Pac. 588], the facts of which are on all-fours with the case at bar. At page 786 of that opinion it is stated: ''On the defendants' default in payment of rent, at least two courses were open to plaintiff. He had the option to sue directly for the instalments of rent then due, allowing the lease to continue in force, or to terminate the lease in the event of nonpayment after demand and notice. He elected to pursue the latter course and by the foregoing notice he gave the defendants the option of paying the amount due within the time prescribed or surrendering possession. The defendants exercised the option given them by the notice by vacating the premises. Had they failed to avail themselves of either option, it is to be inferred from the contents of the notice that the plaintiff would have commenced an action of unlawful detainer against them. Had he recovered possession of the premises in such an action, he would have been entitled to judgment for rents due up to the time of such recovery, but he would not have been entitled in that action, or in any other action, to a judgment based upon subsequent rents or rental values. It is not perceived that a different rule should apply where a lessee voluntarily surrenders possession under one of the options given him by the lessor. The notice did not of itself terminate the lease. It was in the nature of an alternative offer which became effective upon the acceptance by defendants of one of the alternatives thereof.'' To like effect see *Moskovitz* v. *LeFrancois*, 121 Cal. App. 310, p. 314 [8 Pac. (2d) 1049]; *Guiras* v. *Harry H. Culver & Co.*, 109 Cal. App. 743 [293 Pac. 705]. These cases and others to like effect are distinguishable from the case of *Burke* v. *Norton*, 42 Cal. App.

705 [184 Pac. 45], relied upon by appellant. There the lease involved provided "and at his option to terminate this lease . . . that the exercise of one right or remedy by the lessor shall not impair his right to any other remedy". There was not any such provision in the lease involved in this appeal nor in the aforementioned cases other than *Burke* v. *Norton, supra.*

 Appellant further contends, however, that even though the principal (lessees herein) was discharged that the guarantor would not be relieved by reason of the provisions of section 2819 of the Civil Code which provides that a guarantor is not exonerated "except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended"; and by reason of section 2824 of the Civil Code, which reads: "A guarantor, who has been indemnified by the principal, is liable to the creditor to the extent of the indemnity, notwithstanding that the creditor, without the assent of the guarantor, may have modified the contract or released the principal," and cites in support of his contention *Ehrman* v. *Rosenthal,* 117 Cal. 491 [49 Pac. 460]. This was a case, however, in which the indebtedness actually existed even though there had been a composition agreement and that case holds that the guarantor was not released by the release of the principal by the composition agreement. The case at bar is one where the principal was actually released from liability for any further rents and the obligation to pay such further rents never accrued.

 On the issue of attorney's fees the appellant relies upon the express terms of the application for the bond wherein the principal undertook to indemnify the surety "from and against any and all loss costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which the corporation shall or may, for any cause, at any time, sustain or incur or be put to, by reason or in consequence of the corporation having executed said bond". The undisputed evidence shows that an attorney was frequently consulted by the surety both before and after the lessee quit the premises. We cannot say that the surety

should have known that the lessee would quit the premises pursuant to the notice from the lessor or that it should have known that its legal liability to the lessor would not exceed $1800. Under the rule of *Tally* v. *Ganahl,* 151 Cal. 481 [90 Pac. 1049], *Cohn* v. *Smith,* 37 Cal. App. 764 [174 Pac. 682], and *Aetna Casualty & Surety Co.* v. *Exnicios,* 104 Cal. App. 723, 726 [286 Pac. 453], the appellant is entitled to attorneys' fees in defending its liability under the lease as well as in its defense to the pending action.

Under the rule of *Kirk* v. *Culley,* 202 Cal. 501 [261 Pac. 994], we may find the reasonable value of such attorneys' fees without remanding the cause to the trial court, and paragraph IV of the findings of fact is therefore modified to read: "That defendant is entitled to a credit of $75 as and for the premium on the bond referred to in Paragraph VIII of the amended cross-complaint, that the reasonable value of the attorneys' fees incurred by defendant is $500, and that defendant is entitled to a credit of $500 as and for such attorneys' fees." It is further ordered that the judgment be modified to read: "And it is ordered and adjudged that plaintiff Maurice Mercantile Co., a corporation, do have and recover from American Employers' Insurance Company, a corporation, defendant, the sum of $625.00 with interest thereon from November 29, 1929, at the rate of seven per cent per annum, until paid, together with plaintiff's costs incurred in this action, amounting to $16.50."

As so modified the judgment is affirmed, appellant to recover its costs on appeal.

Nourse, P. J., and Spence, J., concurred.