**Phil JACOBSON et ux., Appellants,**

**v.**

**John R. KINGSBERY, Appellee.**

No. 11354.

Court of Civil Appeals of Texas.

Austin.

Jan. 12, 1966.

Rehearing Denied Feb. 2, 1966.

Ewell H. Muse, Jr., McKay & Avery, Austin, for appellants.

Black & Stayton, Austin, for appellee.

ARCHER, Chief Justice.

This suit was brought by appellants, Phil and Dorothy Jacobson, as lessors under a lease contract, against appellee, John R. Kingsbery, one of the guarantors of the faithful performance of the lease. Neither the lessee nor its assign is a party to the suit.

Appellants seek damages in the amount of $9,489.00, being the undisputed amount of delinquent rentals through December of 1964. Appellee's Second Amended Original Answer, upon which he went to trial, contains a general denial, a plea that "Under the laws of the State of California, which are controlling herein, plaintiffs were required upon demand by defendant, to pursue whatever rights or remedies they may have against Pyramid before any cause of action can mature in their favor against defendant," and allegations to the effect that appellants released the primary obligors of the lease and accordingly released appellee. By trial amendment appellee further alleged that if the assignment of the lease from Lucky Boy to Pyramid was not approved by plaintiffs, then the lease was thereupon cancelled and all parties, primary and secondary, were released from liability thereunder.

The cause was tried before a court and jury and the jury's verdict was favorable to appellee. Final judgment was entered that appellants take nothing by their suit against appellee.

This appeal is founded on 15 points and the first seven are grouped and are to the effect that the trial court having found that plaintiffs were entitled to recover as a matter of law, unless barred therefrom by the affirmative defenses raised by defendant; the court erred in overruling plaintiffs' motion for instructed verdict and for judgment because there was no evidence, or the evidence was insufficient to support any affirmative defenses; that there is no evidence or the evidence is insufficient to support defendant's alleged theory of a sale or assignment of the lease in question; that any such sale or assignment would not operate to release the defendant from his obligation as a guarantor on the lease; that there is no credible evidence to support a finding that Pyramid Corporation was solvent, and plaintiffs were required to proceed first against such corporation, and if the evidence could support such finding that such would not operate under the law to relieve the defendant, or constitute a valid defense to the suit.

Points numbered 8 to 12 are that the court erred in rendering judgment on the basis of the jury's answer to Issue No. 4 to the effect that after the premises were vacated plaintiff attempted to relet the same without advising Sorrells that any reletting of the premises would be for the benefit of the lessee because there is no evidence or the great weight and preponderance of the evidence does not support such finding; and even if such were the case this would not constitute a valid defense; that it was defendant's burden to obtain a jury finding that plaintiffs had elected to "surrender, abandon, cancel and rescind the said lease," and did not do so.

Points Nos. 13, 14 and 15 are directed to the action of the court in refusing to give plaintiffs' requested issue inquiring whether or not defendant waived any right to complain of the procedure by which plaintiffs attempted to rent the premises after the abandonment thereof by lessee; that the court erred in failing to permit the plaintiffs to prove the insolvent condition of the companies Lucky Boy and Pyramid Corporation, by the introduction of Exhibit 3–A, the bankruptcy schedules, and finally the court erred in allowing the defendant to open and close the argument before the jury.

Appellee has 14 counterpoints to the effect that appellants in attempting to relet, and by reletting the premises without notifying the lessee or its assigns that such reletting was for the benefit and account of lessee, released the lessee from further liability and thereby released appellee as guarantor; that the jury's answer to Issue No. 4 to the effect that Jacobson did not advise Sorrells that a reletting of the premises would be for the benefit of lessee is supported by sufficient evidence; that the question of notice to Sorrells under Issue No. 4 is the only disputed fact issue presented in connection with appellee's defense of release of the lessee, and such was established; that the question of notice to Sorrells constitutes at least one basic element of the defense of release of the lessee; that the court correctly refused to submit appellants' requested issue inquiring as to the waiver, because appellee had no duty to inform appellants of his defenses, and no evidence that appellee in any way misled appellants concerning his position; that by the law of California appellants are first required to exhaust their remedies against the primary obligors under the lease, and is a substantive right; that the answers of the jury to Issues Nos. 1 through 3, collectively find that the lease was assigned by Lucky Boy to Pyramid with the consent of appellants and are supported by the evidence; that the jury's findings with respect to Issues Nos. 5 and 6 concerning the financial condition of Pyramid on or about July 2, 1963, and on December 23, 1964 are supported by sufficient evidence; that appellee's demand on July 2, 1963 that appellants first pursue their remedies against Lucky Boy, cannot estop appellee from asserting as a defense that appellants are required to pursue Pyramid; that the court did not err in refusing to admit into evidence appellants' Exhibit 3–A, being the bankruptcy petition filed by Pyramid because it was hearsay, and if error, such was harmless; that the court correctly allowed appellee to open and close the argument to the jury because the entire submission pertained to appellee's defenses, and if error such is harmless, and under the law of California when appellants found out that the lease had been assigned to Pyramid they had the option to accept such assignment or of cancelling it, and if the assignment was not accepted such was terminated.

In a trial before a jury, the trial court "found and hereby finds as a matter of law that the plaintiffs are entitled to recover herein as prayed for unless such recovery is barred by the affirmative defenses raised by and on behalf of the defendant herein," and thereafter, submitting the case to the jury on 6 Special Issues, overruled plaintiffs' motion for judgment and granted judgment for defendant that plaintiffs take nothing. The parties stipulated that California decisions, statutes, etc. would be considered properly proved up for purposes of citation or reliance thereon.

By a lease contract dated September 2, 1959 plaintiffs let their building to Lucky Boy of San Diego, Inc., the stock of which was owned by Kingsbery, and Kingsbery guaranteed the faithful performance of the terms and conditions of the lease. The building was completed and occupied in January 1960. Sometime after taking possession, Kingsbery sold his stock to Pyramid Corporation, both of which corporations became defunct.

The premises were abandoned by the tenant in August–September 1961.

The defendant makes his defenses that Pyramid became the principal obligor and that prior to suit defendant made written demand that plaintiffs first exhaust their remedies against Pyramid before suing defendant, and that such was not done and no cause of action had yet matured; that after default plaintiffs did not give written notice and took possession, locked the doors, denied access to lessees, and put out "for rent" signs, and in July 1962 relet the property and thus elected to surrender and rescind the lease, and defendant was not liable, and that the lease was cancelled by operation of law.

The case was submitted on six Special Issues and the answers are as follows:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that the lease from Plaintiff Jacobson to Lucky Boy of San Diego, Inc., was sold, transferred or assigned by Lucky Boy of San Diego, Inc. to Pyramid Corporation before August 28, 1961?

Answer 'Yes' or 'No.'

ANSWER: 'Yes.'

If you have answered the foregoing special issue 'Yes,' you will answer the following special issue; otherwise, you will not answer it.

SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that, before September 18, 1961, Plaintiff had notice of such sale, transfer or assignment, if any you have found?

Answer 'Yes' or 'No.'

ANSWER: 'Yes.'

If you have answered the foregoing special issue 'Yes,' you will answer the following special issue; otherwise, you will not answer it.

SPECIAL ISSUE NO. 3: Do you find from a preponderance of the evi-dence that Plaintiff Jacobson, after having notice of such sale, transfer or assignment, if you have so found, dealt with Pyramid Corporation as the lessee of the premises involved herein?

Answer 'Yes' or 'No.'

ANSWER: 'Yes.'

SPECIAL ISSUE NO. 4: Do you find from a preponderance of the evidence that, after the premises in question were vacated and before Plaintiff Jacobson attempted to relet the same, he did not advise Mr. Sorrells that any reletting of the premises thereafter by Plaintiff Jacobson would be for the benefit of the lessee?

Answer 'He did advise' or 'He did not advise.'

ANSWER: 'He did not advise.'

If you have answered special issues 1, 2 and 3 'Yes,' you shall answer special issues 5 and 6; otherwise, you will not answer them.

In connection with the two following issues, you are instructed that a corporation is insolvent when it is unable to pay its debts from its own means as they become due.

SPECIAL ISSUE NO 5: Do you find from a preponderance of the evidence that, on July 2, 1963, Pyramid Corporation was insolvent?

Answer 'Yes' or 'No.'

ANSWER: 'No.'

SPECIAL ISSUE NO 6: Do you find from a preponderance of the evidence that, on December 23, 1964, Pyramid Corporation was insolvent?

Answer 'Yes' or 'No.'

ANSWER: 'No.' "

Since there is no question as to the lease and its terms we do not copy it, except the guaranty which reads:

> "For good and valuable consideration receipt of which is hereby acknowledged we and each of us do hereby individually *garrantee* (sic) the faithful performance of all of the terms and conditions of the above lease."

This is signed by John R. Kingsbery and J. Carl Hughes.

The rental was a minimum of $300.00 per month.

Kingsbery owned all of the capital stock of Lucky Boy and sold such to Houston W. Sorrells. Attorneys for Sorrells requested plaintiffs to authorize a transfer of the lease to a prospective partnership which plaintiffs refused to do unless Kingsbery remained as a guarantor.

Sorrells sold all of the stock of Lucky Boy to Pyramid Restaurant Corporation.

Rent was paid until August 1961, at which time plaintiff wrote Sorrells, and Sorrells replied by letter dated August 28, 1961 stating that the place had been sold to Pyramid and had been closed and requested plaintiff to take the place back, and plaintiff told Sorrells that he did not want to take possession, and demanded that the rent be paid.

During September several checks were received by plaintiff but were not honored, but later some were paid.

On October 31, 1961 John R. Gorman, Jr., wrote Jacobson requesting approval of a plan of payment for the delinquent rent, and Jacobson called Gorman and said that he would be happy to accept the checks for the rent. One payment of $300.00 was made.

On November 21, 1961 Jacobson wrote Kingsbery requesting Kingsbery to communicate with him so they could discuss Jacobson's claim against Kingsbery as guarantor before proceedings were instituted.

Jacobson talked with an attorney for Kingsbery who said he would investigate the matter and advise Jacobson within ten days.

On December 14, 1961 attorney for Kingsbery wrote Jacobson and requested a copy of the lease, which was sent.

Much correspondence was had between Jacobson and an attorney for Kingsbery.

Jacobson made efforts to relet the premises but without success until in July 1962 when a tenant for a year at $150.00 was secured but this tenant stayed only a short time.

On January 2, 1962 plaintiff wrote to Mr. Savitch that he expected to be in San Diego and that he wanted some information from Kingsbery so he could made an effort to effect a lease which would be to the interest of all parties.

There were many letters and conversations between Jacobson and Savitch concerning the rental of the premises.

On May 10, 1962 Jacobson wrote Kingsbery stating that he had made efforts to secure a tenant to minimize the loss but without success, and requested a meeting in an attempt to effect a settlement. No answer was made by Kingsbery.

On May 27, 1963, an attorney for plaintiff wrote defendant telling him of the sums due, and that unless contacted suit would be filed.

On July 2, 1963 an attorney for defendant wrote that Mr. Jacobson should pursue whatever claim he has against Lucky Boy prior to making demands on the guarantor and demanded that such be done.

It appears that a prime question, if not the controlling issue in this appeal, is whether under the laws of California plaintiffs were required upon demand by defendant to pursue whatever rights or remedies

they may have against Pyramid before any cause of action can mature against defendant.

The trial court found that as a matter of law that plaintiffs are entitled to recover unless such recovery is barred by the affirmative defenses, and after a trial before a jury rendered judgment for defendant.

■ The jury in answer to Special Issue No. 1, found that the lease from Jacobson to Lucky Boy was transferred to Pyramid before August 28, 1961, and in answer to Issue No. 2 the jury found that Jacobson had notice of such transfer, and in answer to Issue No. 3 the jury found that Jacobson, after having notice of such sale, dealt with Pyramid as the lessee of the premises.

In answer to Issue No. 4, the jury found that after the premises were vacated and before Jacobson attempted to relet the same he did not advise a Mr. Sorrells that any reletting thereafter would be for the benefit of the lessee. The jury found that on July 2, 1963 Pyramid was solvent, and was not insolvent on December 23, 1964.

We believe the answers of the jury are supported by sufficient evidence, and established the elements of appellee's defense of release of the lessee.

We have hereinabove set out or made reference to the actions of the parties and will not further discuss such evidence except for clarification.

The execution by Lucky Boy and the guaranty by Kingsbery of the lease on September 2, 1959 is not disputed.

Kingsbery who owned all of the stock in Lucky Boy sold said stock to Houston Sorrells, which he had a right to do.

In December 1960 the stock in Lucky Boy was sold to Pyramid, of which John Gorman was president, and Sorrells treasurer.

The rent was not paid for July and August 1961. Jacobson wrote Sorrells on August 22 requesting payment, and on August 28 Sorrells advised Jacobson that Pyramid had closed.

On September 18, 1961 a conference was had between Sorrells, Jacobson and Gorman, at which time Jacobson said he had a couple of bad checks issued by Pyramid for rent and that he would go to the D.A. if they did not straighten it up.

Sorrells testified that at no time did he receive any notice that Jacobson was reletting the premises for the benefit or account of the tenant.

Jacobson testified that he advised Sorrells that the tenant must continue the lease and that the premises would be relet for Lucky Boy's benefit, and that Sorrells agreed to assist in putting up the "For Rent" signs.

It is apparent that Jacobson acting through his brother and no one else placed the "For Rent" signs on the premises a few days after September 18, 1961.

After the lease was abandoned by the tenant and after Jacobson began efforts to relet the property his contacts with Sorrells were directed towards collecting the checks given by Pyramid for August and September rent.

On March 22, 1962 Jacobson wrote Sorrells a letter and said that he had not received payment for the check dated 9/18/61, and that unless the amount of the check was not sent in 7 days he would pursue such course as he deemed advisable.

On October 24, 1961 Jacobson wrote Kingsbery and advised him that the business had been closed, everything moved out and current rentals were not being paid. Kingsbery had moved and did not get this letter. On November 21, 1961 Jacobson again wrote Kingsbery, enclosing a copy of the October 24 letter and requested Kingsbery to contact Jacobson so that a discussion could be had relative to Jacobson's claim.

On December 27, 1961 Kingsbery made a trip to San Diego and went to the premises,

and found that the building was not occupied, doors locked and "For Rent" signs were up, with only the phone number of Jacobson's brother listed, and on December 29 his attorney Savitch advised him that he was released under the guarantee, and that he should not enter into any further negotiations with Jacobson unless he wanted the property back.

In July 1962 Jacobson relet the property to one Newmark and could not remember whether he gave notice of such to Sorrells. The premises was relet again in December 1963 without contacting Sorrells.

Kingsbery testified from his experience in the restaurant business that if he had been put on notice when the trouble first started, it is "very possible" that he could have amended the difficulties.

All parties agree that the law of California governs all substantive issues in this cause.

Kingsbery's liability is secondary and is dependent upon liability on the part of Lucky Boy and/or Pyramid being established, and the prime issues concern the liability of the primary obligors under the lease, and if Jacobson by his acts and conduct has released the tenant he has also released Kingsbery, regardless of how diligently he has pursued Kingsbery alone.

The Civil Code of California contains the following provisions:

"§ 2809. [Measure of liability: Generally.] The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation.

§ 2810. [Same: Disability of principal.] A surety is liable, notwithstanding any mere personal disability of the principal, though the disability be such as to make the contract void against the principal; but he is not liable if for any other reason there is no liability

upon the part of the principal at the time of the execution of the contract, or the liability of the principal thereafter ceases, unless the surety has assumed liability with knowledge of the existence of the defense."

In Mortgage Finance Corporation v. Howard, 210 Cal.App.2d 569, 26 Cal.Rptr. 917 (1962), it was stated:

"The foregoing enactments restate collectively the common-law rule that the liability of a surety is, as a general rule, coextensive with that of the principal. It must be neither larger in amount nor in other respects more burdensome than that of the principal."

In Maurice Mercantile Co. v. American Employers Insurance Co., 140 Cal.App. 354, 35 P.2d 1047 (1934), in a lease case the lessee defaulted and the lessor took action amounting to a termination of the lease. It was held that the surety had no further obligation. Stephens v. Daugherty, 33 Cal. App. 733, 166 P. 375 (1917).

The California rule upon which appellee relies is stated in Bernard v. Renard, 175 Cal. 230, 165 P. 694, 3 A.L.R. 1076 (1917) as follows:

"The law on this question was very clearly stated by the District Court of Appeal of the Second Appellate District in an opinion written by Presiding Justice Conrey in Rehkopf v. Wirz et al., 31 Cal.App. 695, 161 Pac. 285, as follows:

'Where a tenant abandons the leased property and repudiates the lease, the landlord may accept possession of the property for the benefit of the tenant and relet the same, and thereupon may maintain an action for damages for the difference between what he was able in good faith to let the property for and the amount provided to be paid under the lease agreement. Bradbury

v. Higginson, 162 Cal. 602 [123 Pac. 797]. But a lessor who chooses to follow that course must in some manner give the lessee information that he is accepting such possession for the benefit of the tenant and not in his own right and for his own benefit. If the lessor takes possession of property delivered to him by his tenant and does so unqualifiedly, he thereby releases the tenant. Baker v. Eilers Music Co., 26 Cal.App. 371 [146 Pac. 1056]; Welcome v. Hess, 90 Cal. 507 [27 Pac. 369, 25 Am.St.Rep. 145]. An unqualified taking of possession by the lessor and reletting of the premises by him as owner to new tenants is inconsistent with the continuing force of the original lease. If done without the consent of the tenant to such interference, it is an eviction, and the tenant will be released. If done pursuant to the tenant's attempted abandonment, it is an acceptance of the surrender and likewise releases the tenant.' "

In Dorcich v. Time Oil Co., 103 Cal.App. 2d 677, 230 P.2d 10 (1951) the rule is set out.

■ On September 18, 1961 Jacobson had a conference with Sorrells at which time the intended abandonment of the lease was made known to Jacobson, and Jacobson had the option of reletting the property for his own account or of reletting the property for the lessee's account, in which latter case Jacobson was required by the law of California to give advance notice to the tenant of his intentions.

In passing it may be noted that Mr. Jacobson was a California lawyer and a businessman well versed in the principles involved and aware of his rights and of the rights of his tenant. Rognier v. Harnett, 45 Cal.App. 2d 570, 114 P.2d 654 (1941).

We believe that the finding of the jury in answering Special Issue No. 4 is supported by the evidence.

The lease was abandoned. Jacobson did attempt to relet the property without giving notice to the tenant that the reletting was for the tenant's account.

■ The inquiry in Issue No. 4 is limited to Mr. Sorrells and this was because he is the only person Jacobson claims to have notified of any intention to relet the premises for the benefit of the tenant.

The manner in which Issue No. 4 was submitted is in accord with the submission of issues narrowed to the particular act on which there is a dispute. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449; Rule 279, Texas Rules of Civil Procedure.

There is no evidence that Kingsbery ever waived any right.

Appellee's defense is Section 2845 of the California Civil Code, which provides as follows:

"A surety will require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

■ There was no error in sustaining appellee's objection to appellants' Exhibit 3–A, being the bankruptcy petition filed by Pyramid in January 1962. The statements are hearsay for the purpose of this suit, and in any event harmless.

■ The court correctly allowed appellee to open and close the arguments to the jury. The appellee had the burden on his defense, and if error, such was harmless since appellants did not show any material harm as a result thereof. Rule 269(a),

T.R.C.P.; Dixon v. Dixon, Tex.Civ.App., 348 S.W.2d 210, n. w. h.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

I respectfully dissent. I would sustain all of appellants' points essential to reversing and rendering judgment for them and, in the alternative, I would sustain such of their points as require a reversal and remand.